STATE OF NORTH CAROLINA v. TIMOTHY LANE BEANE

No. COA00-421

(Filed 18 September 2001)

**1. Witnesses— child—failure to administer oath**

The trial court did not commit plain error in a taking indecent liberties and attempted first-degree statutory sexual offense case by failing to administer the oath to a four-year-old minor victim prior to taking her testimony, because the trial court determined that the minor victim did not understand the meaning of placing her hand on the bible and concluded that requiring her to do so would have been futile, but that the minor child did understand the importance of telling the truth.

**2. Constitutional Law— right of confrontation—opportunity to cross-examine witness**

The trial court did not violate defendant's rights under the Sixth Amendment Confrontation Clause in a taking indecent liberties and attempted first-degree statutory sexual offense case by denying defendant an opportunity to cross-examine a four-year-old minor victim during her competency voir dire, because: (1) as long as the victim's preliminary testimony supports a conclusion that she understood her duty to tell the truth, then the court's failure to grant a voir dire examination by defendant's counsel is harmless error; (2) where the trial court limits defendant's ability to confront witnesses at a competency hearing but allows defendant full cross-examination rights at trial, defendant's rights to confrontation under the Sixth Amendment are not violated; and (3) defendant was not excluded from the hearing, his attorney was present, and presumably he was allowed to confer with his attorney during and after the hearing.

**3. Evidence— hearsay—corroboration**

The trial court did not err in a taking indecent liberties and attempted first-degree statutory sexual offense case by admitting testimony by a four-year-old minor victim's family members and by a detective concerning the victim's out-of-court statements, because: (1) the testimony was used as corroboration and tended to add weight and credibility to the victim's testimony; (2) it is not necessary that corroborative evidence mirror the declarant's testimony and may include new or additional information as long as the new information tends to strengthen or add credibility to the

testimony it corroborates; and (3) there is no evidence indicating the statements were introduced as substantive evidence.

**4. Appeal and Error— preservation of issues—failure to present argument or authority**

The trial court did not abuse its discretion in a taking indecent liberties and attempted first-degree statutory sexual offense case by allegedly denying defendant an opportunity to meaningfully cross-examine witnesses and present a defense, because: (1) defendant failed to present an argument or authority demonstrating that the trial court's ruling concerning his cross-examination improperly influenced the jury's verdict; and (2) defendant failed to argue how not allowing the questions listed in his brief violated any rule or statutory provision, and a review of the specific questions reveals that they were leading, called for speculative answers, or solicited marginal relevant evidence.

**5. Indecent Liberties; Sexual Offenses— first-degree—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motions to dismiss the charges of taking indecent liberties and attempted first-degree statutory sexual offense at the close of all evidence, because there was ample evidence to support defendant's convictions.

Appeal by defendant from judgment entered 18 November 1999 by Judge James C. Davis in Union County Superior Court. Heard in the Court of Appeals 28 March 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Sarah Ann Lannom, for the State.*

*Lisa Miles for defendant appellant.*

TIMMONS-GOODSON, Judge.

Timothy Lane Beane ("defendant") was convicted of one count of taking indecent liberties with a minor and one count of attempted first-degree statutory sexual offense. The trial court sentenced defendant to a term of 157 to 198 months' imprisonment. Defendant now appeals.

The evidence presented at trial tended to show that defendant was married to Lisa, the prosecuting witness' ("C.R.") aunt. C.R., who

was four years old at the time of trial, testified that while she was visiting defendant, he gave her a "bad touch" by "pull[ing] [her] legs up" and "kiss[ing] [her] down there" on her "no-no" which she "[p]ee[d] with." According to C.R., defendant also "put cold stuff on his finger and rubbed it down there and it hurted [sic]." C.R. further stated that at the time of the alleged incident, she was not wearing any clothing, because defendant had removed it. C.R. used anatomically correct dolls to demonstrate how defendant touched her. According to C.R., she related the above-noted incident to her stepgrandmother, her natural mother, her father, her stepmother, and the detective investigating the allegations, Robert L. Rollins ("Detective Rollins"), all of whom testified at trial.

C.R.'s stepgrandmother testified that in May 1998, she learned that C.R. disliked "Tim," her "mommy's sister's husband," because he was "mean to her" and "hurt her." Upon further inquiry by her stepgrandmother, C.R. told her that defendant had touched and kissed her "down there." Based upon her discussions with C.R., the stepgrandmother informed C.R.'s stepmother that the stepmother and C.R. needed to talk.

C.R.'s stepmother testified that defendant babysat for C.R. in May 1998. After being questioned by her stepmother, C.R., upset and crying, related that defendant had touched and kissed her "down there," pointing to her vaginal area. C.R. likewise told her father of the incident, and he testified to the same at trial. The father further recalled that when he and his wife took C.R. to visit defendant and Lisa, C.R. would "get really scared and start crying hysterically[,]" stating, "I don't want to be here. I don't want to see Tim." The father also testified that around the same time as the alleged incident, he and his wife noticed that C.R.'s vaginal area was red and swollen.

Upon learning of the alleged incident, C.R.'s father alerted local law enforcement authorities. A uniformed officer was dispatched to C.R.'s home, and shortly thereafter, Detective Rollins began his investigation. The detective testified at trial that in his first interview with C.R., the two discussed "good touches" and "bad touches," at which time, C.R. pointed to her vaginal area and stated, "Tim touched me down there." When Detective Rollins inquired as to Tim's identity, C.R. responded, "Lisa's Tim." In their second interview, C.R. used anatomically correct dolls to demonstrate the incident. It was Detective Rollins' opinion that C.R.'s behavior was consistent with that of other child victims of sexual assault.

STATE v. BEANE

[146 N.C. App. 220 (2001)]

Defendant called C.R.'s natural mother to testify on his behalf. The mother stated that C.R. informed her that "Tim had hurt her on her privates" only after the interview with Detective Rollins. Testifying on his own behalf, defendant denied ever inappropriately touching C.R.

---

Defendant raises ninety-eight assignments of error on appeal, but presents only six arguments in his appellate brief. As a preliminary issue, we note that all assignments of error for which no argument appears in defendant's brief are deemed abandoned. *See* N.C.R. App. P. 28(b)(5) (2001).

Defendant assigns as error the following issues for review: the trial court erred (I) in failing to give the oath to C.R. prior to the admission of her testimony; (II) in not allowing defendant to cross-examine C.R. during her competency *voir dire*; (III) in admitting hearsay testimony as substantive evidence; (IV) in denying defendant a right to meaningfully cross-examine witnesses and present a defense; (V) in denying his motion to dismiss based upon the insufficiency of the evidence. Furthermore, defendant contends that the cumulative effect of the above-alleged errors was so prejudicial that he did not receive a fair trial.

(I)

[1] By his first assignment of error, defendant contends the trial court committed plain error in failing to administer the oath to C.R. prior to taking her testimony. We disagree.

Prior to the presentation of evidence, the trial court conducted a *voir dire* of C.R. to determine her competency to testify. The court first excused both the jury and others in attendance, except for the parties, C.R., C.R.'s father, and C.R.'s mother and stepmother. The court then proceeded with the *voir dire*, allowing the State to question C.R. C.R. answered standard background questions, after which time the following exchange took place:

Q: [the State]: And if I told you that this shirt was pink, would that be the truth or a lie?

A: [C.R.]: A lie.

Q: And what is a lie . . . ?

A: Something where you tell a thing that's not the right answer.

Q: And what happens when you tell a lie?

A: You get in trouble.

. . .

Q: What were you here to tell us today?

A: What Tim done [sic] to me.

Q: Okay. And when you tell us what Tim did to you, are you going to tell us the truth or tell us a lie?

A: The truth.

Q: And why were you going to tell us the truth?

A: Because it really happened.

. . .

Q: And do you understand that it's important to tell the truth?

A: Yes.

Q: Okay. And that's what you're going to promise to tell today, is the truth?

A: Yes.

The trial court further inquired of C.R. whether she attended church or studied the Bible, and whether she knew "what it mean[t] to put [her] hand on the Bible and raise [her] right hand and . . . take an oath to tell the truth." C.R. responded simply, "I do know to tell the truth." Based upon its inquiry, the court concluded that C.R. did not understand the significance of taking an oath and should not be required to do so. Defendant did not object to the court's ruling. Pursuant to C.R.'s *voir dire* testimony, the court subsequently concluded that she was competent to testify.

"[I]n a criminal prosecution, the defendant is entitled to have the testimony offered against him given under the sanction of an oath. This is a part of his constitutional right of confrontation." *State v. Robinson*, 310 N.C. 530, 539, 313 S.E.2d 571, 577 (1984). Therefore, "[b]efore testifying, every witness shall be required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his mind with his duty to do so." N.C. Gen. Stat. § 8C-1, Rule 603 (1999).

Despite the constitutional nature of the oath requirement, our appellate courts have consistently held that where the trial court fails to administer the oath to a witness, the defendant's failure to object waives appellate review of the court's error. *See Robinson*, 310 N.C. at 539-40, 313 S.E.2d at 577-78; *State v. Hendricks*, 138 N.C. App. 668, 671, 531 S.E.2d 896, 899 (2000); *State v. Sessoms*, 119 N.C. App. 1, 4, 458 S.E.2d 200, 202 (1995), *affirmed*, 342 N.C. 892, 467 S.E.2d 243, *cert. denied*, 519 U.S. 873, 136 L. Ed. 2d 129 (1996); *In re Nolen*, 117 N.C. App. 693, 696, 453 S.E.2d 220, 222-23 (1995). The rationale supporting the waiver of appellate review in the above-referenced cases is that "[i]f an objection had been made, the trial court could have corrected the oversight by putting the witness under oath and allowing him to redeliver his testimony, if necessary." *Robinson*, 310 N.C. at 540, 313 S.E.2d at 578.

Defendant acknowledges his failure to object, but argues that his omission should not entirely bar our review because, unlike in the above-cited cases, his objection would not have prompted the trial court to take corrective action. Given that the court's decision not to administer the oath was a deliberate one, we agree that defendant's failure to object does not absolutely bar our review in accordance with the aforementioned cases. The objection's futility notwithstanding, defendant should have objected to properly preserve the error. *See* N.C.R. App. P. 10(b)(1) (2001). Because defendant failed to comply with our Appellate Rules, he is entitled to relief only if he can demonstrate plain error. *See State v. Roseboro*, 351 N.C. 536, 552, 528 S.E.2d 1, 12, *cert. denied*, 531 U.S. 1019, 148 L. Ed. 2d 498 (2000).

Plain error is fundamental error amounting to a denial of the accused's basic rights. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). To demonstrate plain error, the defendant must prove "(1) there was error and (2) without this error, the jury would probably have reached a different verdict." *State v. Najewicz*, 112 N.C. App. 280, 294, 436 S.E.2d 132, 141 (1993), *disc. review denied*, 335 N.C. 563, 441 S.E.2d 130 (1994).

We cannot say the trial court's failure to administer the oath to C.R. constituted a fundamental error having a probable impact on the jury's verdict. The court determined that C.R. did not understand the meaning of placing her hand on a Bible, and concluded that requiring her to do so would have been an exercise in futility. *See* N.C. Gen. Stat. § 8C-1, Rule 603 official commentary (1999) (stating that " '[t]he rule [concerning the oath] is designed to afford the flexibility

required in dealing with religious adults . . . and children. Affirmation is simply a solemn undertaking to tell the truth; no special verbal formula is required.' ") (quoting Fed. R. Civ. P. 603, commentary); *State v. Davis*, 106 N.C. App. 596, 605, 418 S.E.2d 263, 269 (1992) (noting that "it is not necessary for a witness to understand the obligation to tell the truth from a religious point of view"), *cert. denied*, 333 N.C. 347, 426 S.E.2d 710 (1993). The trial court did conclude, however, that C.R. understood the importance of telling the truth and found her competent to testify. We determine that any error in the court's failure to administer the oath to C.R. was not plain error. *See Robinson*, 310 N.C. at 540, 313 S.E.2d at 578 (holding that trial court's failure to give oath to child witness did not amount to plain error). Accordingly, defendant's first assignment of error is overruled.

## (II)

**[2]** By his second assignment of error, defendant argues the trial court erred in denying him an opportunity to cross-examine C.R. during her competency *voir dire* in violation of his rights under the Confrontation Clause. We disagree.

The Sixth Amendment's Confrontation Clause states, in pertinent part, "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *accord* N.C. Const. art. I, § 23 ("In all criminal prosecutions, every person charged with a crime has the right . . . to confront the accusers and witnesses with other testimony . . . ."). "The opportunity for cross-examination, protected by the Confrontation Clause, is critical for ensuring the integrity of the fact-finding process." *Kentucky v. Stincer*, 482 U.S. 730, 736, 96 L. Ed. 2d 631, 641 (1987).

In concluding that defendant should not be allowed to cross-examine C.R. during her competency *voir dire*, the trial court ruled as follows:

> [Defendant] will be allowed latitude in [the] cross examination to try to discredit, so to speak, her ability to testify and know the difference between right and wrong. But you're not entitled in the qualifications of the witness to cross examine. Most of the time the Court itself will determine whether or not somebody is qualified to testify. I have chosen to put that burden on the State by requiring [it] to ask the questions of the child, in that I had no earthly idea with her being the age that she was whether she

would· know anything at all, that she would be able to say. The qualification is not a matter of cross examination.

Under N.C. Gen. Stat. § 8C-1, Rule 601, "[e]very person is competent to be a witness" unless "the court determines that he is . . . incapable of understanding the duty of a witness to tell the truth." N.C. Gen. Stat. § 8C-1, Rule 601 (a)(b) (1999). Accordingly, all persons, regardless of age, are qualified to testify, unless they lack the capacity to understand the difference between telling the truth and lying. *See Davis*, 106 N.C. App. at 605, 418 S.E.2d at 269; *see also State v. Jenkins*, 83 N.C. App. 616, 621, 351 S.E.2d 299, 302 (1986) (stating that, as a matter of law, there is no age below which one is incompetent to testify), *cert. denied*, 319 N.C. 675, 356 S.E.2d 791 (1987). Whether a witness is qualified to testify is a determination within the sound discretion of the trial court based on its observation of the witness. *See State v. Fields*, 315 N.C. 191, 204, 337 S.E.2d 518, 526 (1985). "Absent a showing that the ruling as to competency could not have been the result of a reasoned decision, the ruling must stand on appeal." *State v. Hicks*, 319 N.C. 84, 89, 352 S.E.2d 424, 426 (1987); *see also State v. Rael*, 321 N.C. 528, 532, 364 S.E.2d 125, 128 (1988) (upholding the trial court's finding that four-year-old victim of sexual abuse was competent to testify).

In the instant case, the trial court found C.R. competent to testify. Our review of the record supports the trial court's decision. C.R. demonstrated an adequate understanding of the truth and its importance, stating, "[y]ou get in trouble [if you lie]." Our Supreme Court has found similar evidence sufficient to support a conclusion that a child witness was competent. *See State v. Jones*, 310 N.C. 716, 722, 314 S.E.2d 529, 533 (1984) (upholding the trial court's determination that a child witness was competent where she testified that she would get a spanking if she did not tell the truth). Thus, the trial court did not abuse its discretion in finding C.R. competent to testify.

In *State v. Huntley*, 104 N.C. App. 732, 737, 411 S.E.2d 155, 158 (1991), *disc. review denied*, 331 N.C. 288, 417 S.E.2d 258 (1992), this Court upheld the trial court's refusal to allow defense counsel an opportunity to conduct a *voir dire* examination of the child witness before the trial court qualified the child as a competent witness. In *Huntley*, defendant objected to the child victim being sworn as a witness and requested a *voir dire* examination to determine her competency. The trial court denied defendant's request, and the State elicited the following information from the child witness:

[MR. WILLIAMS]: And do you know the difference between telling the truth and not telling the truth?

[PROSECUTRIX]: Tell the truth.

Q: Do you know what a lie is?

A: [No answer.]

Q: If I said you were a boy, would that be the truth or not the truth?

A: Not the truth?

Q: And what happens—what does your mother do when you don't tell the truth?

A: [No answer.]

Q: Do you know what happens if you don't tell the truth?

A: No.

Q: Is it good to tell the truth?

A: Yeah.

Q: Are you going to tell the truth today?

A: Yeah.

Q: Do you promise to tell the truth about what happened, about what [defendant] did?

A: Yeah.

*Huntley*, 104 N.C. App. at 735-36, 411 S.E.2d at 157. In rejecting defendant's argument that defense counsel should have been allowed to conduct a *voir dire* examination of the child before she was qualified as a competent witness, we stated that, "as long as the victim's preliminary testimony supported a conclusion that she understood her duty to tell the truth, then the court's failure to grant a [*voir dire*] examination by defendant's counsel is harmless error." *Id.* at 737, 411 S.E.2d at 158. Because the "testimony recited demonstrate[d] the child's understanding of her obligation to tell the truth and indicate[d] her promise to tell the court what occurred[,]" any error to the defendant was harmless. *Id.*

In *Kentucky v. Stincer*, 482 U.S. 730, 96 L. Ed. 2d 631 (1987), the U.S. Supreme Court held that the defendant's rights under the

Confrontation Clause were not violated where the defendant was physically excluded from the competency hearing of the child witnesses because the defendant was given an opportunity to cross-examine the witnesses at trial. *Stincer*, 482 U.S. at 744, 96 L. Ed. 2d at 647. The Court concluded that "the critical tool of cross-examination was available to counsel as a means of establishing that the witnesses were not competent to testify, as well as a means of undermining the credibility of their testimony." *Id.* at 744, 96 L. Ed. 2d at 646-47. The Court further held that because the questions posed at the competency hearing were easily repeated in the defendant's presence at trial, the character of the hearing itself militates against finding a violation of the defendant's Confrontation Clause rights. *Id.* at 739-41, 96 L. Ed. 2d at 643-44.

*Stincer* indicates that where the trial court limits defendant's ability to confront witnesses at a competency hearing but allows defendant full cross-examination rights at trial, defendant's rights to confrontation under the Sixth Amendment are not violated. Furthermore, any prejudice suffered by the defendant may be further mitigated by the circumstances surrounding the competency hearing and the character of questions posed therein.

Applying *Huntley* and *Stincer* to the case *sub judice*, we determine that the trial court's decision to disallow defense counsel to cross-examine the child witness at the competency hearing was harmless error. Because defendant was given an opportunity to cross-examine C.R. at trial, his right to confrontation was not violated, nor was he prejudiced by the court's initial ruling regarding C.R.'s competency to testify. C.R.'s testimony revealed that she understood the import of her statements to the court, as well as the distinction between the truth and a lie. C.R. further repeated the substance of her *voir dire* testimony for the jury.

Moreover, the nature of the questions posed during the competency *voir dire*, as well as the circumstances therein, mitigated any interference with defendant's constitutional rights. Defendant was not excluded from the hearing, his attorney was present, and, presumably, he was allowed to confer with his attorney during and after the hearing. The State's inquiry was clearly intended to establish C.R.'s qualifications to testify. Although there were questions concerning the substance of C.R.'s testimony, including inquiry as to why she was there and what defendant was wearing, these questions were limited and asked for the sole purpose of establishing C.R.'s understanding of the issues and her qualifications to testify.

Finally, the State repeated the substance of its inquiry during C.R.'s direct examination.

Defendant acknowledges that he was given an opportunity to cross-examine C.R. at trial, but argues that his cross-examination was ineffective. Defendant lists at least seventeen objections made by the State during his cross-examination and sustained by the court. Defendant notes that the State never stated the basis for its objections, nor did the court explain why it sustained the objections. Based upon these objections, defendant contends that the error in excluding him from participating in the competency hearing was prejudicial.

Our review of the evidence does not support defendant's contention. For example, many of the objections concerned defense counsel's inadvertent references to C.R.'s family members by the wrong name. Likewise, the court sustained an objection where defense counsel apparently referred to Detective Rollins by the prosecutor's name. Following at least three of the objections, defendant requested a bench conference. Although the court granted defendant's requests, the substance of those conferences do not appear on the record, nor does it appear that defendant insisted the conference appear on the record. *See State v. Alston*, 307 N.C. 321, 341, 298 S.E.2d 631, 644 (1983) (noting that it is the appellant's responsibility to compile a complete and accurate record on appeal). At other times, defendant failed to rephrase obviously improper questions in light of an objection.

More importantly, defendant's questions similar to those posed by the State at the competency hearing were not challenged, with the exception of a request for clarification. The court did sustain objections to defendant's inquiring of C.R. as to whether Defendant Rollins recorded any of her statement. However, the court ruled that defendant could recall C.R. for questioning following Detective Rollins' testimony. Also, the court allowed defendant to view Detective Rollins' notes from his interviews with C.R. and to use the notes during defense counsel's cross-examination of the detective.

Defendant fails to recognize that the Sixth Amendment protects only " 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *Stincer*, at 739, 96 L. Ed. 2d at 643 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 88 L. Ed. 2d 15, 19 (1985) (*per curiam*)). We further note that the trial court has wide discretion in controlling the scope of cross-examination. *See* N.C.

Gen. Stat. § 8C-1, Rule 611 (1999); *State v. Coffey*, 326 N.C. 268, 290, 389 S.E.2d 48, 61 (1990) (stating that, "although cross-examination is a matter of right, the scope of cross-examination is subject to appropriate control in the sound discretion of the court"). The trial court's discretion over cross-examination is especially appropriate where, as here, the witness is very young.

Contrary to defendant's contentions, we conclude that defendant's opportunity to effectively cross-examine C.R. at trial cured any prejudice he may have suffered in not being allowed to question the witness during the competency *voir dire*. Accordingly, defendant's second assignment of error is overruled.

### (III)

**[3]** Defendant further argues that the trial court erred in admitting certain testimony by C.R.'s family members and by Detective Rollins concerning C.R.'s out-of-court statements. Defendant argues that the testimony was hearsay, improperly admitted as substantive evidence.

At trial, defendant objected to the admission of C.R.'s out-of-court statements during the testimony of her stepmother and stepgrandmother. Defendant did not object, however, to similar testimony by Detective Rollins and C.R.'s father concerning C.R.'s out-of-court statements. The State contends on appeal that the failure of defendant to challenge the admission of the statements during the testimony of Detective Rollins and C.F.'s father waives our review of this assignment of error. We are not so persuaded.

During the testimony of C.R.'s stepgrandmother, defendant objected to the admission of C.R.'s out-of-court statements on the basis of hearsay and further stated, "I'm going to object to the whole line of question and answers by the witness." Contrary to the State's assertion, we find that the foregoing objection preserved defendant's challenge to the line of questioning at issue in this assignment of error.

An out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible at trial. *See* N.C. Gen. Stat. § 8C-1, Rule 801(c), 802 (1999). However,

> [i]t is well-settled that a witness' prior consistent statements are admissible to corroborate the witness' sworn trial testimony. Corroborative evidence by definition tends to "strengthen, con-

firm, or make more certain the testimony of another witness."
Corroborative evidence need not mirror the testimony it seeks to
corroborate, and may include new or additional information as
long as the new information tends to strengthen or add credibil-
ity to the testimony it corroborates.

*State v. McGraw*, 137 N.C. App. 726, 730, 529 S.E.2d 493, 497,
*disc. review denied*, 352 N.C. 360, 544 S.E.2d 554 (2000) (citations
omitted).

In the present case, C.R.'s out-of-court statements, as testified to
by her family and Detective Rollins, tended to add weight and credi-
bility to her testimony. As stated previously, the fact that C.R.'s testi-
mony was unsworn does not constitute plain error. Furthermore, the
only evidence that did not directly corroborate C.R.'s testimony was
the testimony given by her father. C.R.'s father testified that C.R.
expressed discontent when he took her to visit defendant and his
wife. As stated *supra*, it is not necessary that corroborative evidence
mirror C.R.'s testimony and "may include new or additional informa-
tion as long as the new information tends to strengthen or add credi-
bility to the testimony it corroborates." *Id.*

Defendant further argues that the out-of-court statements were
not introduced to corroborate C.R.'s testimony, but as "substantive
evidence much more compelling than the unsworn ramblings of a
child who needed to be constantly led." We disagree.

Despite defendant's arguments to the contrary, there is no evi-
dence in the transcript indicating that the statements were intro-
duced as substantive evidence. The better practice would have been
for the State to specify the purpose for which the statements were
offered. Defendant did not challenge the State's failure to specify the
purpose for which the evidence was being offered, however, and
there was no requirement for the State to do so. *Id.* at 730, 529 S.E.2d
at 497. We conclude that the testimony of family members and
Detective Rollins corroborated C.R.'s statements at trial and were
admissible for that purpose. We therefore overrule defendant's third
assignment of error.

(IV)

[4] We next address defendant's argument that the trial court de-
nied him an opportunity to meaningfully cross-examine witnesses
and present a defense. To support his argument that he was denied
meaningful cross-examination, defendant presents a list of the trial

STATE v. BEANE

[146 N.C. App. 220 (2001)]

court's rulings against him. Defendant does not, however, point to a single ruling by the trial court that violates a particular rule of evidence or procedure. Instead, defendant simply urges this Court to "read the 328-page transcript."

"In the absence of controlling statutory provisions or established rules, all matters relating to the orderly conduct of the trial or which involve the proper administration of justice . . . are within the trial judge's discretion." *State v. Young*, 312 N.C. 669, 678, 325 S.E.2d 181, 187 (1985). Because the scope of cross-examination is within the court's discretion, the court's rulings "will not be held to be error in the absence of a showing that the verdict was improperly influenced by the limited scope of the cross-examination." *State v. Barber*, 317 N.C. 502, 506-07, 346 S.E.2d 441, 444 (1986).

Our review of the transcript reveals no general bias for the State on the part of the trial court, nor an abuse of discretion concerning the defendant's opportunity to cross-examine witnesses. Furthermore, defendant fails to present argument or authority demonstrating that the court's ruling concerning his cross-examination improperly influenced the jury's verdict. Nor do we find that the sustaining of objections to defendant's cross-examination improperly prejudiced defendant's case. We therefore conclude that the court's rulings did not impede defendant's opportunity to meaningfully cross-examine witnesses.

Regarding his argument that he was not allowed to present a defense, defendant contends that during his own testimony, "the trial court denied [him] the opportunity to answer the most basic questions, questions designed to establish his credibility and to allow him the opportunity to deny the very allegations against him." Defendant cites a list of several objections to specific questions, which he claims attempted to solicit important background information, demonstrate his character and the biases of other witnesses, allow him to deny allegations, and rebut the State's case. We disagree.

Again, defendant fails to argue that not allowing the questions listed in his brief violated any rule or statutory provision. Furthermore, our review of the specific questions cited reveals that the questions were leading, called for speculative answers, or solicited marginally relevant evidence at best. *See State v. Satterfield*, 300 N.C. 621, 627, 268 S.E.2d 510, 515 (1980) (noting that the trial court may bar repetitious, argumentative or irrelevant questioning). We hold the court did not abuse its discretion in sustaining objections

to the questions cited by defendant, and we thus conclude that defendant was not denied the opportunity to present a defense.

[5] Defendant next assigns error to the trial court's denial of his motion to dismiss made at the close of all of the evidence. Having thoroughly reviewed defendant's argument supporting this assignment of error and the record on appeal, we determine there was ample evidence to support defendant's conviction for both attempted first-degree sexual offense and taking indecent liberties with a minor. *See* N.C. Gen. Stat. §§ 14-27.4(a)(1) and 14-202.1(a) (1999). Accordingly, this assignment of error is overruled.

Given our resolution of the foregoing issues, we find no merit in defendant's final argument that he was prejudiced by the cumulative effect of the trial court's alleged errors.

For the reasons contained herein, we conclude that defendant received a fair trial, free from prejudicial error.

No error.

Judges WYNN and HUDSON concur.