STATE OF NORTH CAROLINA v. TWANPRECE NESHAWN IVEY

No. 458PA05

(Filed 18 August 2006)

**Search and Seizure—failure to signal turn–not a violation under circumstances—no probable cause**

Defendant's failure to signal his turn at a T-intersection did not violate N.C.G.S. § 20-154(a) because no other traffic was affected, the officer who stopped defendant lacked probable cause to stop defendant's vehicle, and the firearm seized in the resulting search should have been excluded from evidence.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, 171 N.C. App. 516, 615 S.E.2d 738 (2005), affirming a judgment entered on 25 May 2004 by Judge David S. Cayer in Superior Court, Mecklenburg County. Heard in the Supreme Court 18 April 2006.

*Roy Cooper, Attorney General, by Clinton C. Hicks, Assistant Attorney General, for the State.*

*Isabel Scott Day, Mecklenburg County Public Defender, by Julie Ramseur Lewis, Assistant Public Defender, for defendant-appellant.*

BRADY, Justice.

On 11 September 2002, Charlotte-Mecklenburg Police Officer Christopher Rush (Officer Rush) stopped a sport utility vehicle driven by defendant Twanprece Neshawn Ivey after defendant made a right turn without using a turn signal. Officer Rush subsequently obtained defendant's consent and searched the vehicle, recovering a firearm. The fruit of this search was the basis of defendant's convictions of possession of a firearm by a felon and carrying a concealed weapon. We must determine the constitutionality of the traffic stop by ascertaining whether Officer Rush had probable cause to believe defendant's operation of his vehicle violated any applicable traffic statute.

Before the trial court, defendant made a motion *in limine* to exclude the firearm from evidence, arguing Officer Rush lacked probable cause to believe a traffic violation had occurred. The trial court denied defendant's motion, and defendant then pleaded guilty to both

offenses, which were consolidated under the possession of a firearm by a felon charge. The trial court sentenced defendant, who had a prior record level of II, at the maximum of the presumptive range to a term of fifteen to eighteen months imprisonment.

Defendant appealed the denial of his motion to suppress to the Court of Appeals, which unanimously affirmed the trial court's decision in an unpublished opinion. *State v. Ivey*, 171 N.C. App. 516, 615 S.E.2d 738, 2005 WL 1669023 (July 19, 2005) (No. COA04-1420). We hold a reasonable officer, under the circumstances presented, would not have had probable cause to believe that a traffic violation occurred and, thus, the seizure and subsequent search of defendant's vehicle were unreasonable and violated defendant's rights under the Fourth Amendment to the United States Constitution and Article I, Section 20 of the North Carolina Constitution. Therefore, we reverse the decision of the Court of Appeals and remand with instructions to vacate defendant's convictions and remand to the trial court for proceedings not inconsistent with this opinion.

## FACTUAL BACKGROUND

On 11 September 2002, while on routine patrol of an urban area, Officer Rush observed defendant driving a white Chevrolet Tahoe sport utility vehicle with "tinted windows and expensive, fancy chrome wheels" on Monument Street in Charlotte, North Carolina. There is no indication that any other automobile or pedestrian traffic which might have been in the area would have been affected by defendant's operation of the vehicle. Officer Rush, some distance directly behind the automobile, saw defendant come to a complete stop at a T-intersection and then make a right turn without signaling. A concrete median at the T-intersection blocked a left turn, so that, as Officer Rush confirmed at the suppression hearing, defendant had no choice but to turn right. After observing defendant's turn, Officer Rush initiated a traffic stop of the sport utility vehicle and issued a uniform citation to defendant for unsafe movement under N.C.G.S. § 20-154(a) for failure to signal. During this traffic stop, Officer Rush solicited and received defendant's consent to a warrantless search of the automobile. During this search, Officer Rush discovered a firearm, which was the basis for defendant's convictions of possession of a firearm by a felon and carrying a concealed weapon.

## ANALYSIS

As a general rule, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic

violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). In examining the legality of a traffic stop, the proper inquiry is not the subjective reasoning of the officer, but whether the objective facts support a finding that probable cause existed to stop the defendant. *See State v. McClendon*, 350 N.C. 630, 635, 517 S.E.2d 128, 132 (1999). Probable cause exists when there is a fair probability or substantial chance a crime has been committed and that the defendant committed it. *See Illinois v. Gates*, 462 U.S. 213, 245-46 (1983). Thus, the United States and North Carolina Constitutions require an officer who makes a seizure on the basis of a perceived traffic violation to have probable cause to believe the driver's actions violated a motor vehicle law. *See McClendon*, 350 N.C. at 635-36, 517 S.E.2d at 132 (adopting the reasoning of *Whren v. United States* in interpreting Article I, Section 20 of the North Carolina Constitution). The standard of probable cause is a basic tenet that applies regardless of whether the action is taken by a deputy sheriff, a city police officer, a state Alcohol Law Enforcement agent, or a wildlife enforcement officer.

Although neither party briefed the issue, there was discussion at oral argument concerning whether this traffic stop was a case of "driving while black." " 'Driving while black' refers to the charge that police stop, question, warn, cite or search African American citizens because of their race." Matthew T. Zingraff et al., *Evaluating North Carolina State Highway Patrol Data: Citations, Warnings, and Searches in 1998*, at 2 (Nov. 1, 2000) (report submitted to North Carolina Department of Crime Control & Public Safety). From the record in the instant case, we cannot determine whether the stop of defendant, a black male, was a selective enforcement of the law based upon race. Regardless, this Court will not tolerate discriminatory application of the law based upon a citizen's race. As espoused by the Supreme Court of the United States, "the Constitution prohibits selective enforcement of the law based on considerations such as race," because such enforcement violates the Fourteenth Amendment's Equal Protection Clause. *Whren*, 517 U.S. at 806. However, such "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.*

In making a determination of whether Officer Rush had probable cause to stop defendant, we must consider the alleged violation of North Carolina traffic law. Our General Statutes provide:

The driver of any vehicle upon a highway or public vehicular area before starting, stopping or turning from a direct line shall first

see that such movement can be made in safety, and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn, and whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this section, plainly visible to the driver of such other vehicle, of the intention to make. such movement. The driver of a vehicle shall not back the same unless such movement can be made with safety and without interfering with other traffic.

N.C.G.S. § 20-154(a) (2005). Consistent with subsection 20-154(a), "[t]he duty to give a statutory signal of an intended . . . turn does not arise in any event unless the operation of some 'other vehicle may be affected by such movement.' " *Cooley v. Baker*, 231 N.C. 533, 536, 58 S.E.2d 115, 117 (1950) (quoting N.C.G.S. § 20-154(a)); *accord Clarke v. Holman*, 274 N.C. 425, 429-30, 163 S.E.2d 783, 786-87 (1968).

Therefore, unless a reasonable officer would have believed, under the circumstances of the stop, that defendant's actions violated subsection 20-154(a), Officer Rush lacked probable cause to stop defendant's vehicle. More specifically, unless a reasonable officer would have believed that defendant's failure to use his turn signal at this intersection might have affected the operation of another vehicle, then Officer Rush's stop and subsequent search were unconstitutional.

The record in the case *sub judice* simply does not support a finding of probable cause. The record does not indicate that any other vehicle or any pedestrian was, or might have been, affected by the turn. Therefore, the only question is whether Officer Rush's vehicle may have been affected by the turn. Officer Rush was traveling at some distance behind the sport utility vehicle and observed defendant come to a complete stop at the stop sign. Defendant then turned right, the only legal movement he could make at the intersection. Regardless of whether defendant used a turn signal, Officer Rush's vehicle would not have been affected. Officer Rush's only option was to stop at the intersection. Accordingly, Officer Rush's vehicle could not have been affected by defendant's maneuver.

This case is readily distinguishable from *Whren*, in which the officers observed

a dark Pathfinder truck with temporary license plates and youthful occupants waiting at a stop sign, the driver looking down into the lap of the passenger at his right. The truck remained stopped

**STATE v. IVEY**

[360 N.C. 562 (2006)]

at the intersection for what seemed an unusually long time—more than 20 seconds. When the police car executed a U-turn in order to head back toward the truck, the Pathfinder turned suddenly to its right, without signaling, and sped off at an "unreasonable" speed.

517 U.S. at 808. As noted by the United States Court of Appeals for the District of Columbia in *Whren*, the officers observed three violations of District of Columbia motor vehicle laws committed by the defendant: failure to give " 'full time and attention' " to his driving, turning without signaling, and driving away at an unreasonable speed. *See United States v. Whren*, 53 F.3d 371, 376 (D.C. Cir. 1995), *aff'd*, 517 U.S. 806 (1996). Because failure to give a signal, in and of itself, does not constitute a violation of N.C.G.S. § 20-154(a), nothing in the record suggests Officer Rush had probable cause to believe any traffic violation occurred.

We conclude that Officer Rush's stop violated defendant's rights under the Fourth Amendment to the United States Constitution and Article I, Section 20 of the North Carolina Constitution. Because the fruit of Officer Rush's search of the vehicle arose from the illegal stop, all evidence seized during the search should have been excluded by the trial court, and it was therefore error to deny defendant's motion to suppress. *See Wong Sun v. United States*, 371 U.S. 471, 484-87 (1963) ("The exclusionary prohibition extends as well to the indirect as the direct products of such invasions."); *Mapp v. Ohio*, 367 U.S. 643, 654-55 (1961) (applying the exclusionary rule to the states, thereby barring admission of evidence obtained in violation of the Fourth Amendment in state criminal trials).

Accordingly, we reverse the decision of the Court of Appeals and remand to that court with instructions to vacate defendant's convictions and remand to the trial court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.