STATE OF NORTH CAROLINA v. MARY ROSEMAN JONES

No. COA06-1495

(Filed 16 October 2007)

## 1. Search and Seizure— probable cause—reasonable suspi-cion—driving while impaired

The trial court did not err in a habitual driving while impaired case by denying defendant's motion to suppress even though defendant contends an officer did not have probable cause to stop her, because: (1) it is unnecessary to determine whether he had probable cause for a registration violation when the totality of circumstances revealed the officer had reasonable suspicion to stop defendant for DWI; and (2) contrary to defendant's asser-tion, the DWI statute has no requirement that a vehicle must be interfering with traffic in order for an officer to constitutionally stop a vehicle.

## 2. Motor Vehicles— habitual driving while impaired—suffi-ciency of findings of fact

The trial court did not err in a habitual driving while impaired case by allegedly making insufficient findings of fact that defend-ant committed any traffic violations, because: (1) the order in open court and the written order signed by the court found such violations; and (2) the trial court specifically found that the offi-cer initiated a traffic stop on his suspicion that defendant could have violated North Carolina law including driving while under the influence and for a registration plate law violation.

## 3. Evidence— questioning by trial court—promoting under-standing of case—impartiality—no expression of opinion

The trial court did not err in a habitual driving while impaired case by asking an officer an additional question about defendant's behavior after the traffic stop, because: (1) the trial court stated it was trying to understand the whole picture of what happened, and although it was outside the scope of what was appropriate for such a hearing, defendant made no legitimate argument that the judge was partial to the State's case; (2) when the trial court questions a witness to clarify his testimony or to promote an understanding of the case, such questioning does not amount to an expression of the trial court's opinion as to defendant's guilt or innocence; (3) the trial court is presumed to disregard incompe-

STATE v. JONES

[186 N.C. App. 405 (2007)]

tent evidence in making its decisions as a finder of fact, and there was no showing by defendant to overcome this presumption; and (4) none of the trial court's findings of fact related to any testimony received after the officer was asked to step down.

**4. Appeal and Error— preservation of issues—failure to object—failure to administer oath to witness**

The trial court did not commit prejudicial error in a habitual driving while impaired case by questioning an officer after the close of the evidence without again informing the officer that he was still under oath, because: (1) where a trial court fails to administer the oath to a witness, defendant's failure to object waives appellate review of the court's error since upon objection the trial court could have corrected any error; and (2) defense counsel neither objected nor attempted to question the officer at any time before, during, or after the trial court's questions.

Appeal by defendant from judgment entered 25 April 2006 by Judge Michael E. Beale in Cabarrus County Superior Court. Heard in the Court of Appeals 21 August 2007.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Christopher W. Brooks, for the State.*

*The Law Office of Yolanda M. Trotman, PLLC, by Yolanda M. Trotman, for defendant-appellant.*

HUNTER, Judge.

Mary Roseman Jones ("defendant") pled guilty to habitual driving while impaired, conditioned on her right to appeal the trial court's denial of a motion to suppress. Defendant was sentenced to a minimum of twelve (12) months and a maximum of fifteen (15) months. Defendant now appeals the denial of her motion to suppress. After careful consideration, we affirm.

On 10 September 2005, defendant was traveling east on a two-wheeled motorized vehicle[1] in Kannapolis. Officer M.D. Barnhardt ("Officer Barnhardt") of the Kannapolis Police Department was in his squad car and saw defendant make an "unsteady" turn onto Cannon

---

1. Defendant asserts that the vehicle was a moped or noped, while the State argues that defendant's vehicle, under the North Carolina General Statutes, met the definition of a motorcycle. *See* N.C. Gen. Stat. § 105-164.3(22) (2005) (defining moped); N.C. Gen. Stat. § 20-4.01(27)d (2005) (defining motorcycle).

Boulevard and "put her foot down" as she made the right-hand turn. Officer Barnhardt described defendant's operation of the vehicle as "wobbly" and equated her driving to that of a child learning to ride a bicycle without training wheels for the first time.

Officer Barnhardt followed defendant down Cannon Boulevard, a forty-five (45) mile per hour zone. At this time, Officer Barnhardt formed the opinion that defendant's vehicle was traveling in excess of thirty (30) miles per hour. As defendant was traveling up a slight incline, Officer Barnhardt used his radar and clocked the vehicle at a speed of thirty-two (32) miles per hour. According to Officer Barnhardt, defendant's motorized vehicle was traveling at such a rate of speed that it met the definition of a motorcycle, and he pulled the vehicle over for not having a registration plate. He also concluded that defendant may have been operating this vehicle while impaired. As a result of the traffic stop, defendant was charged with driving while impaired ("DWI"). Defendant was not charged with the registration plate violation or any other traffic violations.

At the hearing on defendant's motion to suppress, Officer Barnhardt testified to the facts as set out above. Defendant called one witness, Steven Halprin ("Halprin"), an owner of Accel Motor Sports. Halprin testified that defendant was operating a "noped," which means there are two floorboards where the feet are to remain while in operation and that the vehicle does not have pedals. Halprin testified that nopeds are "anemic," "accelerate very slowly[,]" are "difficult to handle[,]" and are hard to maneuver with smaller tires. Halprin, however, had no personal knowledge as to the events of that day.

Defendant presents the following issues for this Court's review: (1) whether the trial court erred in denying defendant's motion to suppress; (2) whether the trial court's order presented sufficient findings of fact to support its denial of defendant's motion to suppress; and (3) whether the trial court erred in eliciting testimony from a witness. We address each issue in turn.

I.

[1] In reviewing a ruling on a motion to suppress, the trial court's findings of fact "are conclusive and binding on the appellate courts when supported by competent evidence." *State v. Brooks*, 337 N.C. 132, 140-41, 446 S.E.2d 579, 585 (1994). The conclusions of law, however, "are binding upon us on appeal [only] if they are supported by

the trial court's findings." *Id.* at 141, 446 S.E.2d at 585. Defendant argues that the trial court erred in denying defendant's motion to suppress because Officer Barnhardt did not have probable cause to stop defendant. We disagree.

Before turning to the merits of the case, it is necessary to discuss what level of suspicion is required under the Fourth Amendment of the United States Constitution and under Article 1, Section 20 of the North Carolina Constitution to make a traffic stop. Defendant relies on *State v. Ivey*, 360 N.C. 562, 633 S.E.2d 459 (2006), for the proposition that probable cause is required for all traffic stops. In that case, our Supreme Court held that "the United States and North Carolina Constitutions require an officer who makes a [stop] on the basis of a perceived traffic violation to have probable cause to believe the driver's actions violated a motor vehicle law." *Id.* at 564, 633 S.E.2d at 461; *see Whren v. United States*, 517 U.S. 806, 810, 135 L. Ed. 2d 89, 95 (1996) (noting that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred"). The State argues that this statement is *dicta* and that the standard for a traffic stop need only amount to reasonable suspicion. *See, e.g., State v. Foreman*, 351 N.C. 627, 630, 527 S.E.2d 921, 923 (2000) (applying reasonable suspicion analysis in the context of an investigatory stop); *State v. Aubin*, 100 N.C. App. 628, 631-32, 397 S.E.2d 653, 655 (1990) ("[a]n officer's stop of a car to investigate a potential traffic offense does not require probable cause, but it is governed by the reasonableness standards of the Fourth Amendment").

Generally, reasonable suspicion is required to stop a motorist on suspicion of DWI, while probable cause is required to stop a motorist for a simple traffic violation, such as failure to use a turn signal or speeding. *See State v. Styles*, 185 N.C. App. 271, 274, 648 S.E.2d 214, 216 (2007). The reason for the distinction is that in cases such as drunk driving or driving without a license, the officer must make an investigatory stop to determine whether criminal activity is afoot. *Id.* Accordingly, the Constitution only requires the officer to have reasonable suspicion before making the investigatory stop. *Aubin*, 100 N.C. App. at 631-32, 397 S.E.2d at 655. Such was not the case in *Ivey*. In that case, the Court applied the probable cause standard because it was reviewing a stop based on an alleged traffic violation—failure to use a turn signal—not a stop that would require further investigation. Thus, in this case, the officer's conduct will be constitutional if he had either: (1) reasonable suspicion to stop

defendant on suspicion of DWI; or (2) probable cause to stop defendant for failure to register the vehicle. Because we find that Officer Barnhardt had reasonable suspicion to stop defendant for DWI, we need not determine whether he had probable cause to stop defendant for a registration violation.

At the outset, we note that the trial court's findings of fact are supported by competent evidence. The evidence in support of those findings of fact consists of Officer Barnhardt's testimony before the trial court as set out above. Accordingly, those findings of fact are binding on this Court. *See Brooks,* 337 N.C. at 140-41, 446 S.E.2d at 585. Thus, the issue is whether those findings of fact support the trial court's conclusion that Officer Barnhardt had reasonable suspicion to stop defendant on the DWI charge. *See id.* at 141, 446 S.E.2d at 585.

" 'A police officer may conduct a brief investigative stop of a vehicle where justified by specific, articulable facts which give rise to a reasonable suspicion of illegal conduct.' " *Aubin,* 100 N.C. App. at 632, 397 S.E.2d at 655 (citation omitted). In this case, Officer Barnhardt observed a motorized vehicle driven by defendant operating in a "wobbly" manner and that defendant had to "put her foot down" on the road in order to negotiate a right hand turn and "almost dropped the moped." He equated her operation of the vehicle as she was turning to that of "a child learning to ride a bicycle[]" for the first time. Officer Barnhardt testified that these initial observations occurred within approximately ten (10) seconds. After defendant made the turn, Officer Barnhardt observed defendant for "[t]wo to three" minutes and followed her for "two to three blocks[.]" During this time, he watched defendant wobble on the moped and described her operation of it as "jerky."

We thus conclude that, under the totality of the circumstances, reasonable suspicion existed that defendant was driving while impaired. *See id.* (finding reasonable suspicion of DWI when defendant was weaving within his own lane and traveling below the speed limit); *State v. Jones,* 96 N.C. App. 389, 395, 386 S.E.2d 217, 221 (1989) (same). Accordingly, we need not address whether there was probable cause to stop defendant for failure to register her vehicle.

Defendant relies heavily on *Ivey* for the proposition that, in order for an officer to constitutionally stop a vehicle, the vehicle must be interfering with traffic. Defendant mischaracterizes that Court's holding. The reason the lack of interference with surrounding traffic was relevant in *Ivey* was because that was a requirement of the statute at

issue in that case. *Ivey*, 360 N.C. at 565, 633 S.E.2d at 461 (citation omitted) (" '[t]he duty to give a statutory signal of an intended . . . turn does not arise in any event unless the operation of some "other vehicle may be affected by such movement" ' "). In the instant case, the DWI statute has no such requirement. Thus, we do not find *Ivey* persuasive on this issue. Because defendant's Fourth Amendment rights under the United States Constitution and under Article 1, Section 20 of the North Carolina Constitution were not violated, her assignments of error as to this issue are rejected.

II.

**[2]** Defendant argues that the trial court did not make sufficient findings of fact. We disagree.

In essence, defendant argues that the trial court's factual findings were insufficient because the court did not make any findings "that the defendant committed any traffic violations." As seen in the order entered in open court and the written order signed by the trial court, the court clearly found such violations. Specifically, the trial court found that: "13. Based on the foregoing, Officer Barnhardt initiated a traffic stop on his suspicion that the Defendant could have violated North Carolina law *including driving while under the influence and for a registration plate law violation.*" (Emphasis added.) Thus, defendant's assignment of error as to this issue is rejected.

III.

Defendant makes two arguments in this section. First, that the trial court erred in hearing testimony regarding defendant's behavior after the traffic stop, and second, that the trial court committed prejudicial error in questioning Officer Barnhardt after the close of the evidence. We disagree and address each argument in turn.

A.

**[3]** At the conclusion of re-cross examination by defendant's counsel, Officer Barnhardt was told to step down and the State was told to call its next witness. Before Officer Barnhardt stepped down the trial judge asked him, "[a]fter you stopped her[,] what did you do next?" Officer Barnhardt responded, "[m]y field sobriety tests. Well, I approached her and asked for her license and she didn't have any." At this point, defense counsel objected and pointed out to the trial court that the purpose of the hearing was limited to the narrow issue of whether the stop was constitutional and not whether the defendant was in fact under the influence at the time of the stop.

Because of this additional questioning, defendant argues that the trial judge violated defendant's constitutional right to a "trial[] by an impartial jury of the state[.]" U.S. Const. amend. VI. We fail to see how these questions demonstrate that the trial judge was partial to the State's case. As the trial judge stated, he was trying to understand "the whole picture on what happened[.]" Although "the whole picture on what happened" that night was outside the scope of what was appropriate for such a hearing, defendant has made no legitimate argument that the judge was partial to the State's case.

In fact, "[w]hen the trial judge questions a witness to clarify his testimony or to promote an understanding of the case, such questioning does not amount to an expression of the trial judge's opinion as to defendant's guilt or innocence." *State v. Davis*, 294 N.C. 397, 402, 241 S.E.2d 656, 659 (1978). Furthermore, the trial court is presumed to disregard incompetent evidence in making its decisions as a finder of fact. *State v. Allen*, 322 N.C. 176, 185, 367 S.E.2d 626, 631 (1988). There has been no showing by defendant to overcome this presumption. None of the trial court's findings of fact were related to any testimony received after Officer Barnhardt was asked to step down. Accordingly, we find no prejudicial error, and defendant's assignment of error as to this issue is overruled.

B.

[4] Defendant also argues that the trial court erred in questioning Officer Barnhardt after the close of the evidence without again informing the officer that he was still under oath.

At the conclusion of the evidence by the State and defendant, the trial court stood in recess while the trial judge left the bench to render his decision. The trial judge returned and asked Officer Barnhardt, who was sitting next to the assistant district attorney and not on the witness stand, "what was your suspicion for stopping the defendant on this date? What were you suspicious of her doing?" Officer Barnhardt responded that "[a]fter her wobbling and the clocking of the moped it was a DWI." The trial court also asked "[d]id the registration plate have any reason why you stopped her?" Officer Barnhardt responded that it did.

"[W]here the trial court fails to administer the oath to a witness, the defendant's failure to object waives appellate review of the court's error." *State v. Beane*, 146 N.C. App. 220, 225, 552 S.E.2d 193, 196 (2001). The rationale for this rule is that upon objection the trial court

could have corrected any error. *Id.* Defense counsel neither objected nor attempted to question Officer Barnhardt at any time before, during, or after the trial court's questions. Accordingly, defendant has waived review of this error.

In summary, we hold that neither defendant's Fourth Amendment rights under the United States Constitution nor defendant's rights under Article I, Section 20 of the North Carolina Constitution were violated. We find no error in the trial court's findings of fact and no prejudicial error in the trial court eliciting testimony from the officer.

Affirmed.

Judges WYNN and BRYANT concur.