**STATE of Minnesota, Respondent,**

v.

**Treva Evon PERRY, Appellant.**

**No. A05–2459.**

Court of Appeals of Minnesota.

Jan. 9, 2007.

Lori Swanson, Attorney General, St. Paul, MN; and Raymond F. Schmitz, Olmsted County Attorney, David F. McLeod, Assistant County Attorney, Rochester, MN, for respondent.

John M. Stuart, State Public Defender, Susan J. Andrews, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by TOUSSAINT, Chief Judge; HALBROOKS, Judge; and HARTEN, Judge.*

## OPINION

HALBROOKS, Judge.

Appellant challenges her conviction of misdemeanor child endangerment on the grounds that the language of Minn.Stat. § 609.378, subd. 1(b)(2) (2000), requires proof of actual danger to a child's person or health and that the evidence presented at trial was insufficient to support her conviction.[1] Because the state does not have to prove actual danger to a child's person or health under Minn.Stat. § 609.378, subd. 1(b)(2), when a parent, legal guardian, or caretaker knows that a child is present where controlled substances are being sold, we conclude that the evidence was sufficient to support ap-

pellant's conviction for child endangerment and affirm.

## FACTS

On September 7, 2001, Robert Jarmon, a confidential police informant, went to the home of Gilbert Jordan and Foloshade Oloye to purchase cocaine. Jarmon was working with Rochester Police Officer Daryl Seidel to complete a controlled purchase. Before traveling to Jordan and Oloye's home, Jarmon met with Officer Seidel. At that time, Officer Seidel searched Jarmon and his car, gave Jarmon money to make the drug purchase, and attached a radio transmitting device to Jarmon to enable Officer Seidel to listen to the drug deal. After finding no one home at the Jordan/Oloye residence, Jarmon and Officer Seidel "regrouped" to decide what to do next. Jarmon had previously been told by Oloye that he should go to the home of appellant Treva Perry (Oloye's mother) if he needed drugs and could not find her or Jordan. Officer Seidel instructed Jarmon to go to appellant's home.

After arriving at appellant's residence, Jarmon entered the home and saw two small children, one of whom was not yet able to walk. The children are appellant's grandchildren, whom she was babysitting. Jarmon told appellant that he wanted to buy a quarter ounce of cocaine. Appellant then called Jordan on the phone and, after speaking with him, rode with Jarmon and her two grandchildren to Jordan and Oloye's residence. Because no one was home when they arrived, appellant, the children, and Jarmon returned to appellant's house.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Minn.Stat. § 609.378, subd. 1(b)(2), was amended in 2002 adding language to prohibit knowingly permitting a child to be present where "manufacturing, possessing immediate precursors or chemical substances with intent to manufacture" occurs. 2002 Minn. Laws ch. 314, § 6, at 514.

On the way back to appellant's home, appellant used Jarmon's phone to call her other daughter, Lola Oloye. Lola later arrived at appellant's home and was introduced by appellant to Jarmon. Lola sold Jarmon some crack cocaine in appellant's kitchen while appellant was present. Jarmon testified that appellant's two grandchildren were present in the home when the drug transaction occurred. After the buy, Jarmon again met with Officer Seidel and gave him the drugs and remaining money. Officer Seidel debriefed Jarmon and searched Jarmon and his car for any other drugs or money.

Appellant was charged with second-degree controlled-substance crime, conspiracy to commit second-degree controlled-substance crime, fifth-degree possession of a controlled substance, and child endangerment. Appellant waived her right to a jury trial and did not testify or call any witnesses at her court trial. The district court convicted appellant of child endangerment, a gross-misdemeanor offense.[2] The district court found that "[appellant] was present when the sale occurred, and she believed that the substance sold by Lola Oloye was cocaine." The district court also found that "[c]hildren less than 18 years of age were present at the time that the sale of the cocaine occurred," that appellant is the "grandmother of the children, and she was caring for them on September 7, 2001." As a result, the district court concluded

> [a]s to the fourth charge of child neglect or endangerment, there is simply no question but that [appellant] knew that a drug deal was happening in her home, that her grandchildren were present, and she did nothing about it. There is absolutely no defense advanced excusing that [appellant] allowed this to happen in the presence of her grandchildren.

Her guilt in this regard is established to this Court's satisfaction beyond a reasonable doubt.

The district court stayed imposition of sentence and placed appellant on probation. This appeal follows.

## ISSUES

1. Does Minn.Stat. § 609.378, subd. 1(b)(2) (2000), require proof of actual danger to a child's person or health to convict a person of gross-misdemeanor endangerment?

2. Was the evidence presented at trial insufficient to support appellant's conviction of child endangerment?

## ANALYSIS

### I.

■ Appellant contends that the language of the child-endangerment statute must be interpreted to require some proof of actual danger to a child's person or health, not just the general inherent dangerousness of drug dealing. Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998); *see also O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 892 (Minn.1996) (noting that application of a statute to the undisputed facts of a case involves a question of law, and the district court's decision is not binding on this court). "When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000) (quotation and citation omitted). "A statute should be interpret-

---

2. The district court acquitted appellant of all    other charges.

ed, whenever possible, to give effect to all of its provisions; 'no word, phrase, or sentence should be deemed superfluous, void, or insignificant.' " *Id.* (quoting *Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999)). And "[w]e are to read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Id.*

Appellant was convicted of child endangerment under Minn.Stat. § 609.378, subd. 1(b)(2) (2000). Minn.Stat. § 609.378, subd. 1(b) provides, in relevant part, that

[a] parent, legal guardian, or caretaker who endangers the child's person or health by:

(1) intentionally or recklessly causing or permitting a child to be placed in a situation likely to substantially harm the child's physical, mental, or emotional health or cause the child's death; or

(2) knowingly causing or permitting the child to be present where any person is selling or possessing a controlled substance ... is guilty of child endangerment and may be sentenced to imprisonment for not more than one year or to payment of a fine of not more than $3,000, or both.

If the endangerment results in substantial harm to the child's physical, mental, or emotional health, the person may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both.

Appellant argues that the statutory language "endangers the child's person or health" in the prefatory section of the statute requires proof of actual danger as an essential element of the offense of child endangerment. The term "endangers" is not defined in Minn.Stat. § 609.376 (2000), the definitional section for section 609.378, subdivision 1(b). In a case of first impres-

sion, we conclude that appellant's interpretation of the statute is mistaken.

■ A statute defining a criminal offense must be strictly construed in favor of the defendant. *See State v. Colvin*, 645 N.W.2d 449, 452 (Minn.2002). But this court need not adopt the narrowest possible construction. *State v. Zacher*, 504 N.W.2d 468, 473 (Minn.1993). This court has rejected a narrow reading of subdivision 1(b)(1) that would require a showing of actual harm. *State v. Hatfield*, 627 N.W.2d 715, 720 (Minn.App.2001), *aff'd on other grounds*, 639 N.W.2d 372 (Minn. 2002).

The plain language of the statute provides that a person "endangers" a child by *either:* (1) intentionally or recklessly causing a child to be placed in a situation likely to cause substantial physical, emotional, or mental harm (subdivision 1(b)(1)), *or* (2) knowingly causing or permitting the child to be present where controlled substances are being sold or possessed (subdivision 1(b)(2)). If the conditions in either of the subdivisions are met, a person "endangers the child's person or health" and is, therefore, guilty of child endangerment. The two ways of endangering a child are independent. Therefore, the showing of potential harm required under subdivision 1(b)(1) does not apply to subdivision 1(b)(2).

Further, the phrase "likely to substantially harm" in Minn.Stat. § 609.378, subd. 1(b)(1), would be superfluous if appellant's interpretation of the prefatory term "endangers" were adopted. Requiring proof of actual danger to a child's person or health as an element of the crime under the terms of the prefatory statement, would necessarily entail proof that a situation is only *"likely* to substantially harm [a child]" under subdivision 1(b)(1). (Emphasis added.) *See Hatfield*, 627 N.W.2d at

719–20 (rejecting a claim that actual harm was required to support a gross-misdemeanor conviction under Minn.Stat. § 609.378, subd. 1(b)(1), and stating that "the mere potential for substantial harm to children is sufficient to constitute child endangerment").

■ We conclude that, based on the plain language of Minn.Stat. § 609.378, subd. 1(b), the state does not have to prove actual danger to a child's person or health as an element of the crime when a parent, legal guardian, or caretaker knows that a child is present where drugs are being sold.

## II.

Appellant argues that because evidence of actual danger is required under the definition of "endangers" pursuant to Minn.Stat. § 609.378, subd. 1(b), and because the district court did not find that her grandchildren were in actual danger, the evidence that she was home and baby-sitting her grandchildren when Jarmon purchased drugs from her daughter was insufficient to support her conviction.

■ In considering a claim of insufficient evidence, this court's review "is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction," is sufficient to allow the jurors to reach the verdict that they did. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). The reviewing court must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989). This is especially true when resolution of the matter depends mainly on conflicting testimony. *State v. Pieschke,* 295 N.W.2d 580, 584 (Minn. 1980). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State,* 684 N.W.2d 465, 476–77 (Minn.2004).

■ As previously discussed, the language "endangers the child's person or health" in Minn.Stat. § 609.378, subd. 1(b), does not require a showing of actual danger for a conviction under Minn.Stat. § 609.378, subd. 1(b)(2). Instead, the state must prove that (1) appellant knowingly permitted her grandchildren to be present at the time of an illegal sale or possession of a controlled substance, (2) appellant was a legal guardian or caretaker of the children at the time of the sale or possession, and (3) the grandchildren were younger than age 18. Viewing the evidence in the light most favorable to the conviction, there is ample evidence that appellant knowingly permitted her grandchildren, whom she was caring for at the time, and who were well under the age of 18, to remain in her home while her daughter sold drugs to Jarmon. Therefore, the evidence is sufficient to support appellant's conviction for child endangerment.

Appellant also submitted a pro se supplemental brief, alleging that law-enforcement officials altered and tampered with the audio and video-surveillance tapes that were received in evidence at trial. We conclude that these allegations lack merit, as there is no support for them in the record. Moreover, while the evidence on the tapes may have been determinative with regard to the charges that appellant was acquitted of, the tapes were not dispositive of appellant's conviction of child endangerment. Thus, even if the content of the tapes were, in fact, questionable, the significant tapes had no bearing on appellant's conviction of child endangerment.

## DECISION

The state does not need to prove actual endangerment of a child's person or health as a separate element of the crime of child endangerment under Minn.Stat. § 609.378, subd. 1(b)(2) (2000), when a parent, legal guardian, or caretaker permits a child to be present when a controlled substance is sold. There was sufficient evidence to convict appellant of child endangerment when appellant knowingly permitted her minor grandchildren, whom she was babysitting, to be present during a drug sale.

**Affirmed.**