STATE OF NORTH CAROLINA v. RICHARD LENE McRAE, DEFENDANT

No. COA09-114

(Filed 6 April 2010)

**Search and Seizure—motion to suppress—reasonable suspicion—traffic violation—informant tip**

The trial court did not err in a drugs case by denying defendant's motion to suppress evidence obtained as a result of a traffic stop. An officer had the required reasonable suspicion to stop defendant based on his observation of defendant committing a traffic violation, and alternatively, based on a tip received from a reliable confidential informant.

Appeal by defendant from order entered 18 September 2007 by Judge Thomas H. Lock and judgment entered 23 June 2008 by Judge Gary L. Locklear in Robeson County Superior Court. Heard in the Court of Appeals 10 June 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Jay L. Osborne, for the State.*

*Irving Joyner for defendant-appellant.*

GEER, Judge.

Defendant Richard Lene McRae appeals from the trial court's denial of his motion to suppress evidence obtained as a result of a

**STATE v. McRAE**

[203 N.C. App. 319 (2010)]

traffic stop, contending that the officer who stopped him did not have the reasonable suspicion necessary under the Fourth Amendment to support the stop. We hold that the officer had the required reasonable suspicion based on the officer's observation of defendant's committing a traffic violation and, alternatively, based on a tip received from a reliable, confidential informant. We, therefore, affirm the denial of the motion to suppress.

## Facts

On 5 December 2005, Lieutenant Supervisor Charlie Revels of the Robeson County Sheriff's Department received a tip from a confidential source that an older black male named Richard McRae would that day be driving a green Grand Am with over 60 grams of cocaine within the city limits of Pembroke, North Carolina. The source had previously provided reliable information leading to several felony arrests. Lieutenant Revels sent out a dispatch advising all officers to be on the lookout for a black male driving a green Grand Am within the Pembroke city limits.

At approximately 6:30 that evening, Officer Shawn Clark, who had heard the dispatch, was stopped at an intersection in Pembroke when a green Grand Am driven by a black male passed by him. Officer Clark turned and followed directly behind the car for about 100 feet. At that point, the Grand Am turned right into a Texaco gas station and convenience store parking lot without using his turn signal. There was a medium level of traffic in the area. The Grand Am pulled up to the gas pump, and the driver got out of the car.

Officer Clark pulled in behind the Grand Am, got out of his car, and asked the driver of the Grand Am, whom he later identified as defendant, to have a seat in Officer Clark's car. Officer Clark told defendant that he had failed to signal while turning. As defendant started to walk to the passenger door of Officer Clark's car, Officers Cisco and Davis pulled up. As defendant opened the door of Officer Clark's car, he saw the two other officers and took off running. Officer Clark chased defendant towards the back of the store. As defendant was running, he took off his jacket and threw it on the ground.

About five or 10 minutes later, Officer Clark caught up to defendant in the parking lot of a nearby restaurant and placed him under arrest. Lieutenant Revels then arrived and as Officer Clark was patting defendant down, Lieutenant Revels asked defendant why he had

**STATE v. McRAE**

[203 N.C. App. 319 (2010)]

been running. Defendant said, "Man, they got it." Lieutenant Revels asked, "Got what?" Defendant replied, "[t]he jacket." When defendant's jacket was recovered, officers found a substance that was later determined to be 56.1 grams of cocaine. Defendant was charged with resisting a public officer, two counts of possession with the intent to sell and deliver cocaine, trafficking in cocaine by transportation, trafficking in cocaine by possession, possession of marijuana, and two counts of possession of drug paraphernalia.

On 17 July 2007, defendant moved to suppress all evidence discovered in the search and the statements he made when apprehended. The trial court granted the motion to suppress as to the statements, concluding that defendant was in police custody and had not been advised of his *Miranda* rights when Lieutenant Revels asked him why he ran. The trial court denied the motion as to the cocaine in defendant's jacket on the grounds that Officer Clark had reasonable suspicion to stop defendant.

On 23 June 2008, defendant pled guilty to the charges, reserving his right to appeal the denial of his motion to suppress. He was sentenced to 35 to 42 months imprisonment. Defendant timely appealed to this Court.

## Discussion

Defendant's only contention on appeal is that the trial court erred in denying his motion to suppress because Officer Clark stopped him in violation of his Fourth Amendment rights. When this Court reviews a trial court's ruling on a motion to suppress, the trial court's findings of fact are binding on appeal if they are supported by competent evidence. *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001). "However, the trial court's conclusions of law are fully reviewable on appeal." *State v. McArn*, 159 N.C. App. 209, 212, 582 S.E.2d 371, 374 (2003).

Under the Fourth Amendment, police are permitted to conduct a brief investigatory stop of a vehicle if "an officer [has] reasonable and articulable suspicion of criminal activity." *State v. Hughes*, 353 N.C. 200, 206-07, 539 S.E.2d 625, 630 (2000). Our Supreme Court has explained that "[r]easonable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.' " *State v. Styles*, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 576, 120 S. Ct. 673, 675-76 (2000)).

A court, in determining whether an officer had reasonable suspicion, looks at the totality of the circumstances. *Id.* "The only requirement is a minimal level of objective justification, something more than an 'unparticularized suspicion or hunch.' " *State v. Watkins*, 337 N.C. 437, 442, 446 S.E.2d 67, 70 (1994) (quoting *U.S. v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10, 109 S. Ct. 1581, 1585 (1989)). The reasonable suspicion must, however, arise from "the officer's knowledge prior to the time of the stop." *Hughes*, 353 N.C. at 208, 539 S.E.2d at 631.

Defendant first contends that the trial court erred in concluding that his failure to use his turn signal in violation of N.C. Gen. Stat. § 20-154(a) (2009) justified the stop. That statute provides in pertinent part that "[t]he driver of any vehicle upon a highway or public vehicular area before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and . . . whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this section, plainly visible to the driver of such other vehicle, of the intention to make such movement." *Id.*

In arguing that no violation of § 20-154(a) occurred, defendant relies upon our Supreme Court's decision in *State v. Ivey*, 360 N.C. 562, 562, 633 S.E.2d 459, 460 (2006). In *Ivey*, the Court held that the duty under § 20-154(a) to use a turn signal does not arise unless, as the statute states, another vehicle may be affected by the turn. 360 N.C. at 565, 633 S.E.2d at 461. As a result, an officer may not make an investigatory stop of a vehicle for failing to use a turn signal "unless a reasonable officer would have believed that defendant's failure to use his turn signal at this intersection might have affected the operation of another vehicle . . . ." *Id.*

The Court held in *Ivey* that the officer's stop and subsequent search in that case were unconstitutional because:

> The record does not indicate that any other vehicle or any pedestrian was, or might have been, affected by the turn. Therefore, the only question is whether Officer Rush's vehicle may have been affected by the turn. Officer Rush was traveling at some distance behind the sport utility vehicle and observed defendant come to a complete stop at the stop sign. Defendant then turned right, the only legal movement he could make at the intersection. Regardless of whether defendant used a turn signal, Officer Rush's vehicle would not have been affected. Officer Rush's only option

was to stop at the intersection. Accordingly, Officer Rush's vehicle could not have been affected by defendant's maneuver.

*Id.*, 633 S.E.2d at 461-62.

Subsequent to *Ivey*, the Supreme Court decided *Styles*, 362 N.C. at 414, 665 S.E.2d at 439, in which the Court held that a violation of N.C. Gen. Stat. § 20-154(a) could be sufficient to provide an officer with reasonable suspicion to stop a driver. The Court concluded that reasonable suspicion existed when the defendant switched lanes on a highway without using his turn signal, and the defendant's car was immediately in front of the officer's patrol car. 362 N.C. at 416-17, 665 S.E.2d at 441. A violation of N.C. Gen. Stat. § 20-154(a) occurred "because it is clear that changing lanes immediately in front of another vehicle may affect the operation of the trailing vehicle." 362 N.C. at 417, 665 S.E.2d at 441. As a result, the officer's observation of the failure to use a turn signal "gave him the required reasonable suspicion to stop defendant's vehicle." *Id.*

The facts of this case are more similar to those of *Styles* than those of *Ivey*. No vehicle could have been affected by the turn in *Ivey* since the driver was stopped at a stop sign and could only turn right, and the officer behind the defendant was also required to stop at the stop sign after the defendant's unsignaled turn. In this case, however, as in *Styles*, defendant was traveling, before his turn, in a through lane with "medium" traffic and was a short distance in front of the police officer. The trial court did not err in concluding that a reasonable officer would have believed, under these circumstances, that the failure to use a turn signal could have affected another motor vehicle. Accordingly, the officer had reasonable suspicion to stop defendant based on his failure to use his turn signal.

Additionally, we hold that the tip from the confidential informant was sufficient to provide reasonable suspicion justifying the stop. We look not only at the information possessed by Officer Clark, but also that known to Lieutenant Revels. As this Court has explained:

If the officer making the investigatory stop (the second officer) does not have the necessary reasonable suspicion, the stop may nonetheless be made if the second officer receives from another officer (the first officer) a request to stop the vehicle, and if, at the time the request is issued, the first officer possessed a reasonable suspicion that criminal conduct had occurred, was occurring, or was about to occur.

*State v. Battle,* 109 N.C. App. 367, 370-71, 427 S.E.2d 156, 159 (1993). Thus, if the tip from the confidential informant provided Lieutenant Revels with reasonable suspicion to stop defendant, then Officer Clark could lawfully stop defendant.

Defendant, in arguing that the informant's tip was insufficient, overlooks the fact that the tip in this case came from a reliable, confidential informant rather than from an anonymous source. The State presented evidence and the trial court found that the confidential informant had worked with Lieutenant Revels on several occasions and had provided reliable information in the past that led to the arrest of drug offenders.

The United States Supreme Court has specifically held that a tip from an informant "known to [the officer] personally and [who] had provided him with information in the past" is sufficient to provide reasonable suspicion for a stop. *Adams v. Williams,* 407 U.S. 143, 146, 32 L. Ed. 2d 612, 617, 92 S. Ct. 1921, 1923 (1972). *See also Alabama v. White,* 496 U.S. 325, 330, 110 L. Ed. 2d 301, 309, 110 S. Ct. 2412, 2416 (1990) (observing that "reasonable suspicion can arise from information that is less reliable than that required to show probable cause" and noting that, in *Adams,* the Court had reasoned that "the unverified tip from the known informant might not have been reliable enough to establish probable cause, but nevertheless found it sufficiently reliable to justify a *Terry* stop"); *State v. Morton,* 363 N.C. 737, 738, 686 S.E.2d 510, 510, adopting *per curiam,* 198 N.C. App. 206, 217, 679 S.E.2d 437, 445 (2009) (Hunter, J., dissenting) (holding that "the detectives in this case had reasonable suspicion to believe defendant could be armed based solely on the confidential informant's tip that defendant was involved in a recent drive-by shooting and was wearing gang colors"); *State v. Downing,* 169 N.C. App. 790, 794-95, 613 S.E.2d 35, 38 (2005) (concluding that reasonable suspicion to stop defendant's vehicle existed when previously-proven confidential informant told police defendant would be transporting cocaine that day, defendant was driving vehicle that matched description given by informant, tag numbers on vehicle were registered to defendant, defendant was driving on suspected route, and defendant crossed into county at approximate time informant had indicated).

Moreover, our courts have held that a tip from a reliable, confidential informant may supply probable cause—a standard higher than reasonable suspicion. Thus, in *State v. Green,* 194 N.C. App. 623, 624, 670 S.E.2d 635, 636, *aff'd per curiam,* 363 N.C. 620, 683 S.E.2d 208 (2009), this Court concluded that probable cause existed

to search the defendant, who was driving a brown Durango with South Carolina license plates towards Wilmington, based on a tip from a reliable, confidential informant that an older black male named "Junior," driving an older model Mercedes or mid-size SUV, possibly brown in color, would be leaving from Charleston in about 30 minutes to deliver heroin to the informant in Wilmington. *See also State v. Leach*, 166 N.C. App. 711, 716, 603 S.E.2d 831, 835 (2004) ("A known informant's information may establish probable cause based upon a reliable track record in assisting the police."), *appeal dismissed*, 359 N.C. 640, 614 S.E.2d 538 (2005).

Here, the reliable, confidential informant gave even more specific information than that supplied in *Green*. He identified defendant by name—a name that Lieutenant Revels recognized as someone associated with the drug trade. The informant also described the specific car—a green Grand Am—rather than providing a general type of car, and he advised Lieutenant Revels that defendant would be driving the car within the city limits of Pembroke with 60 grams of cocaine in his possession. We hold that this tip from a proven, confidential informant was sufficient to provide reasonable suspicion to stop defendant.

Defendant, however, points to *Hughes* and *McArn*. In each of those cases, the courts were applying the anonymous tip standard rather than considering a tip from a proven, confidential informant. While, in *Hughes*, an officer had asserted that the informant was reliable, "[t]here was no indication that the informant had been previously used and had given accurate information . . . ." *Hughes*, 353 N.C. at 204, 539 S.E.2d at 628. The Court, therefore, treated the tip as one from an anonymous informant. *Id.* at 208, 539 S.E.2d at 631.

As this Court stressed in *State v. Nixon*, 160 N.C. App. 31, 34, 584 S.E.2d 820, 822 (2003), "[t]he difference in evaluating an anonymous tip [as opposed to a reliable, confidential informant's tip] is that the overall reliability is more difficult to establish, and thus some corroboration of the information or greater level of detail is generally necessary." Because this case involves a reliable, confidential informant, neither *Hughes* nor *McArn* is applicable. The trial court, therefore, did not err in determining that the officer had reasonable suspicion to stop defendant and did not err in denying the motion to suppress the evidence found in the search.

No error.

Judges ROBERT C. HUNTER and STEELMAN concur.