An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-944

NORTH CAROLINA COURT OF APPEALS

Filed:  15 April 2014

STATE OF NORTH CAROLINA

v.                                      Mecklenburg County
                                        No. 10 CRS 225348
TRAVIS LINDLEY,
    Defendant


Appeal by defendant from judgment entered 11 January 2013 by Judge Linwood O. Foust in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 December 2013.

> *Roy Cooper, Attorney General, by Lauren T. Earnhardt, Assistant Attorney General, for the State.*

> *J. Edward Yeager, Jr. for defendant-appellant.*


DAVIS, Judge.


Travis Lindley ("Defendant") appeals from a judgment entered upon a jury verdict finding him guilty of driving while impaired and driving after consuming alcohol while under the age of 21.  On appeal, he contends that the trial court committed

reversible error by (1) denying his motion to suppress based on a lack of reasonable suspicion to justify his traffic stop; and (2) denying his motion to dismiss due to the fact that he was held in jail for an unreasonable amount of time after posting bond. After careful review, we conclude that Defendant received a fair trial free from error.

**Factual Background**

On 29 May 2010, Officer William Duncan ("Officer Duncan") of the Huntersville Police Department was on patrol shortly before 5:00 p.m. in Birkdale Village when he parked his patrol car in front of the Birkdale movie theater. Officer Duncan exited his vehicle to walk across the street when two women on a balcony overlooking the parking lot directly beside the movie theater screamed for his attention. They informed Officer Duncan that they had seen a silver Mitsubishi occupied by two shirtless white males strike another vehicle in the parking lot directly in front of them. The two women pointed in the direction in which the silver Mitsubishi had driven off, and one woman stated "that it went toward — back down Formb[y] Road towards Sam Furr Road, the backside of Birkdale Village."

Officer Duncan then ran back to his patrol car and issued a "Be on the Lookout" ("BOLO") for the silver Mitsubishi. He then drove down Formby Road to search for the vehicle.

Officer Vaughn Griffin ("Officer Griffin") of the Cornelius Police Department received the BOLO regarding the silver Mitsubishi, which included a description of the vehicle and indicated that it was heading towards the Redcliff Apartments. Officer Griffin proceeded to a "cut through" he knew was heavily used by commuters traveling from Birkdale Village to the Redcliff Apartments. Approximately 45 seconds after receiving the BOLO, he saw the silver Mitsubishi traveling north on West Catawba Avenue. Officer Griffin turned around and activated his blue lights and siren. However, the silver Mitsubishi did not stop. Instead, the vehicle made a left turn off of northbound West Catawba Avenue onto Kingspoint Drive, continuing for a quarter of a mile before finally coming to a stop in the parking lot of a townhouse community.

Officer Griffin exited his patrol car and approached the driver's side door of the silver Mitsubishi. He saw two shirtless white males sitting in the front of the vehicle. Defendant was the driver.

Officer Griffin asked for Defendant's license and registration and observed that Defendant "had slurred speech, red glassy eyes, and . . . a strong odor of alcohol coming from his breath." Officer Griffin then asked Defendant to step out of the car. He administered standardized field sobriety tests on Defendant, including the horizontal gaze nystagmus (HGN), the

walk-and-turn, and the one-leg stand. Based on the results of these tests, the odor of alcohol on Defendant's breath, and the fact that Defendant was under 21 years old, Officer Griffin charged Defendant with driving while impaired and driving after consuming alcohol while under the age of 21. Defendant was arrested, placed in the back of Officer Griffin's patrol car, and taken to the Cornelius Police Department.

At the police department, Defendant's blood alcohol level was measured with the Intoxilyzer EC/IR-II, revealing a blood alcohol concentration of .18 grams per 210 liters of breath. At 7:08 p.m., Defendant was transported to the Charlotte-Mecklenburg Police Department, arriving there at 7:33 p.m. He was taken before a magistrate, and his bond was set in the amount of $4,000. He was permitted to call his mother.

At 10:42 p.m., bond was posted on behalf of Defendant. At 10:49 p.m., however, Defendant was taken to the "dress out" area for placement in jail due to the fact that the officers in this area had not received any information that Defendant's bond had been posted. Once they ultimately discovered that Defendant had, in fact, posted bond, he was released at 11:37 p.m.

Prior to trial, Defendant filed motions to dismiss the charges against him and to suppress the evidence obtained as a result of the stop of his vehicle. The trial court denied both motions.

A jury trial was held in Mecklenburg County Superior Court on 8 January 2013. The jury convicted Defendant both of driving while impaired and driving after consuming alcohol while under the age of 21. The trial court sentenced Defendant to a 60-day term of imprisonment, which was suspended and Defendant was placed on supervised probation for 14 months. Defendant was also required to complete 48 hours of community service and obtain a substance abuse assessment within 30 days of sentencing. Defendant filed a timely notice of appeal to this Court.

## Analysis

### I. Denial of Motion to Suppress

Defendant's first argument on appeal is that the trial court erred in denying his motion to suppress because Officer Griffin did not have reasonable suspicion to believe that he was committing a criminal offense at the time of the traffic stop. This contention lacks merit.

Our review of a trial court's ruling on a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke,* 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Furthermore, any

unchallenged factual findings are "deemed to be supported by competent evidence and are binding on appeal." *State v. Roberson,* 163 N.C. App. 129, 132, 592 S.E.2d 733, 735–36 (2004). "The conclusions of law made from the findings of fact are reviewable *de novo*." *State v. Brown,* 199 N.C. App. 253, 256, 681 S.E.2d 460, 463 (2009).

A traffic stop must be based on reasonable suspicion of criminal activity based on the totality of the circumstances. *State v. Maready,* 362 N.C. 614, 618, 669 S.E.2d 564, 567 (2008). Reasonable suspicion must arise from the officer's knowledge before the time of the stop. *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 630 (2000).

> Reasonable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Only "some minimal level of objective justification" is required. This Court has determined that the reasonable suspicion standard requires that "[t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." Moreover, "[a] court must consider the totality of the circumstances — the whole picture in determining whether a reasonable suspicion" exists.

*Maready*, 362 N.C. at 618, 669 S.E.2d at 567 (quoting *State v. Barnard,* 362 N.C. 244, 247, 658 S.E.2d 643, 645 (citations omitted), *cert. denied*, 555 U.S. 914, 172 L.Ed.2d 198 (2008)).

A tip from an informant can provide the reasonable suspicion necessary to initiate an investigatory traffic stop. *State v. Nixon*, 160 N.C. App. 31, 34, 584 S.E.2d 820, 822 (2003). When the basis for a vehicle stop comes from an informant's tip, "the indicia of the tip's reliability" must be taken into account when assessing the totality of the circumstances. *Maready,* 362 N.C. at 619, 669 S.E.2d at 567. Moreover, in evaluating the reliability of an informant's tip, there is a difference between a tip from a known and reliable source, a tip to an officer stemming from a face-to-face encounter, and an anonymous tip. *See id.* at 619, 669 S.E.2d at 567 (discussing reliability of tip received from an informant face-to-face); *see also State v. McRae*, 203 N.C. App. 319, 324, 691 S.E.2d 56, 60 (2010) (addressing known reliable informant); *State v. Hudgins*, 195 N.C. App. 430, 435, 672 S.E.2d 717, 720 (2009) (examining indicia of reliability of tip from anonymous informant).

Defendant claims Officer Griffin lacked reasonable suspicion to stop his vehicle because the information he received from dispatch was no more than "a basic description" that originated from an informant's anonymous tip. Therefore, Defendant argues, no reasonable suspicion existed.

In rejecting Defendant's argument, we find our Supreme Court's decision in *Maready* instructive. In *Maready*, the driver

of a minivan noticed a silver Honda driving in an erratic fashion in her rearview mirror. She informed law enforcement officers in a face-to-face encounter of her observations of the silver Honda's erratic driving. *Maready*, 362 N.C. at 617, 669 S.E.2d at 566. The officers then found the Honda driven by the defendant stopped at a stoplight. They activated their blue lights and conducted an investigatory stop of the vehicle. *Id*.

The defendant argued that the officers lacked reasonable suspicion for the stop of his vehicle. Our Supreme Court disagreed, noting that the tip was not anonymous because the officers received it from an individual who approached the officers in a face-to-face encounter and informed them of the defendant's unsafe driving. The Court further noted that the informant was traveling immediately in front of the defendant's vehicle and was thus in a position to view the alleged traffic violations she had reported. *Id*. at 619, 669 S.E.2d at 567.

The Court gave "significant weight" to the fact that the informant approached the police and "gave them information at a time and place near to the scene of the alleged violations" because the informant would have had "little time to fabricate her allegations against defendant." *Id*. Our Supreme Court also noted the informant's willingness to place "her anonymity at risk" and concluded that, under these circumstances, her tip was reliable. *Id.* at 620, 669 S.E.2d at 568.

Likewise, here, the tip received by Officer Duncan — which, in turn, resulted in the dispatch heard by Officer Griffin — stemmed from Officer Duncan's face-to-face encounter with two witnesses. Like the informant in *Maready*, the witnesses in this case initiated an in-person encounter with Officer Duncan, putting their anonymity at risk in order to report conduct they had just observed. Moreover, the witnesses were able to provide details concerning (1) the make, color, and model of Defendant's car; (2) a description of the driver and his passenger; (3) the location of the damage sustained by Defendant's car; and (4) its last known direction of travel. *See State v. Hughes*, 353 N.C. 200, 203, 539 S.E.2d 625, 628 (2000) (holding that "[r]eliability could be established by showing that . . . the informant demonstrated personal knowledge by giving clear and precise details in the tip").

Even though Officer Duncan did not make the investigatory stop himself, Officer Griffin was responding to the information he received as a result of Officer Duncan's BOLO. Officer Griffin used this information to determine the likely path of Defendant's vehicle and then observed the car matching the description provided by the dispatcher.

We have previously held that

> [i]f the officer making the investigatory
> stop (the second officer) does not have the
> necessary reasonable suspicion, the stop may

> nonetheless be made if the second officer receives from another officer (the first officer) a request to stop the vehicle, and if, at the time the request is issued, the first officer possessed a reasonable suspicion that criminal conduct ha[d] occurred, was occurring, or was about to occur.

*State v. Battle*, 109 N.C. App. 367, 370-71, 427 S.E.2d 156, 159 (1993).

Defendant cites *State v. Peele*, 196 N.C. App. 668, 675 S.E.2d 682, *disc. review denied,* 363 N.C. 587, 683 S.E.2d 383 (2009), in which this Court reversed the trial court's denial of the defendant's motion to suppress evidence obtained following a stop of his vehicle based on information provided by an anonymous tipster. In *Peele,* the officer received a dispatch indicating that a burgundy Chevrolet pickup truck was "a possible careless and reckless, D.W.I., headed towards the . . . intersection." *Id*. at 669, 675 S.E.2d at 684. The officer arrived at the designated intersection within seconds and saw a truck that matched the description of the vehicle. The officer followed the truck for approximately one-tenth of a mile. After observing the truck weave once within its lane of travel, the officer pulled the truck over and charged the driver with driving while impaired. *Id.* at 669, 675 S.E.2d at 684–85.

This Court held that while the anonymous caller had accurately described the vehicle, the caller gave police no way to test his or her credibility. *Id*. at 674, 675 S.E.2d at 687.

We noted that "[t]he record contains no information about who the caller was, no details about what the caller had seen, and no information even as to where the caller was located." *Id.* at 673, 675 S.E.2d at 686.

Here, unlike in *Peele*, the information dispatched to Officer Griffin originated from a face-to-face encounter with an informant rather than from an anonymous tip. Therefore, *Peele* is inapposite. Accordingly, there was reasonable suspicion to stop Defendant's vehicle and Defendant's motion to supress was properly denied.

## II. Denial of Motion To Dismiss

Defendant's final argument is that the trial court erred in denying his motion to dismiss the charges against him on the theory that his rights were violated when he was held in the Charlotte-Mecklenburg County Jail for an unreasonable amount of time following the posting of his bond. We disagree.

Our review of the denial of a motion to dismiss based upon alleged violations of statutes is limited to "'whether there is competent evidence to support the findings and the conclusions. If there is a conflict between the [S]tate's evidence and defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict and such resolution will not be disturbed on appeal.'" *State v. Labinski,* 188 N.C. App. 120, 124, 654 S.E.2d 740, 743 (quoting *State v. Lewis,* 147 N.C. App.

274, 277, 555 S.E.2d 348, 351 (2001)), *disc. review denied,* 362 N.C. 367, 661 S.E.2d 889 (2008). "Findings of fact which are not challenged are presumed to be correct and are binding on appeal." *State v. Eliason,* 100 N.C. App. 313, 315, 395 S.E.2d 702, 703 (1990).

"In order to warrant dismissal of a charge under N.C. Gen. Stat. § 20-138.1(a)(2) [the statute prohibiting driving while impaired], a defendant must make a sufficient showing of a substantial statutory violation and of prejudice arising therefrom." *Eliason*, 100 N.C. App. at 315, 395 S.E.2d. at 703. "Dismissal of charges for violations of statutory rights is a drastic remedy which should be granted sparingly. Before a motion to dismiss should be granted . . . it must appear that the statutory violation caused irreparable prejudice to the preparation of defendant's case." *Labinski*, 188 N.C. App. at 124, 654 S.E.2d at 742-43 (citation and internal quotation marks omitted).

Pursuant to N.C. Gen. Stat. § 15A-534.2, a defendant subject to detention for driving while impaired has the right to pretrial release when a judicial official determines either that (1) the defendant is "no longer impaired to the extent that he presents a danger of physical injury to himself or others or of damage to property if he is released"; or (2) a sober, responsible adult assumes responsibility for the defendant until

he is no longer impaired. N.C. Gen. Stat. § 15A-534.2(c) (2013). Although the judicial official sets the conditions for a defendant's pretrial release, those conditions may not impede on a defendant's right to communicate with counsel and friends.

Here, the trial court made the following oral findings in denying Defendant's motion to dismiss:

> The Court finds that the magistrate set a reasonable bond for the defendant. That the defendant was able to make the bond, and there was never an issue as to the bond or its amount. The defendant was not prejudiced by the setting of the secured bond by the magistrate.
>
> The Court finds that the approximate fifty minute delay between the time of the release of the defendant . . . and the defendant having met the bond requirement . . . was an unintentional delay on the part of the Sheriff's Department. And that it was a reasonable time period that passed between the time the defendant met the bond requirements and the time that the defendant was released.
>
> The Court further finds that the defendant at no time requested an opportunity to have a witness present to observe any part of the arrest.
>
> That the defendant was advised of his constitutional rights, that his rights were on the wall in the jailhouse area where he was, and that he made no efforts for a single request [sic] to have any person present.
>
> The Court further finds that even after the mother came to . . . the Mecklenburg County Jail, she did not enter the jail to attempt to make any observation of the defendant.

The Court further finds that the information the mother received regarding her ability to see the defendant at the jail was given to her by her bondsman, or the bondsman that she was talking to, and not by the Sheriff's Department in any effort to preclude the defendant from having witnesses to observe his condition.

The Court finds that . . . there was no substantial violation of the defendant's constitutional rights.

The Court finds that the defendant has not been deprived of an opportunity to obtain evidence to support any defense.

That the Court finds that the defendant's breathalyzer reading was .18, which was substantially higher than the .08 requirement under the law. And that the defendant, while operating the vehicle, was alleged to have struck another vehicle and failed to stop.

That these are also factors that the magistrate could consider in setting the bond, which information was contained in the affidavit of the arresting officer.

The Court further finds that according to the defendant's own evidence the mother of the defendant talked to the defendant multiple times, and that that [sic] also is or could be some evidence to support the defendant's position at trial as to his sobriety.

The defendant's mother lived in the same household with the defendant, and . . . she would be a suitable person to evaluate his condition during the relevant period.

The Court finds that there's insufficient evidence of any direct injury to the defendant as a result of any delay that may have been alleged to have occurred during the time of the defendant's arrest and the

defendant's release. The motion of the defendant is denied.

Defendant challenges only the trial court's findings that (1) the delay between the posting of his bond and his release was unintentional; (2) this delay was reasonable; and (3) there was no substantial violation of his rights.

Deputy James Ingram ("Deputy Ingram") testified that Defendant was taken to the "booking, dress out" area — the area where inmates are given a standard orange uniform before being admitted into the jail — at 10:49 p.m. He stated that it was not until after Defendant left the "dress out" area at 11:15 p.m. that deputies were informed that he had actually posted his bond at 10:42 p.m., thereby satisfying the conditions for his release. Once they were made aware that his bond had been posted, he was released from the jail at 11:37 p.m. Deputy Ingram explained that this misunderstanding occurred because

> the deputies in the jail reception, dress out area, they wouldn't know that [Defendant] had met his conditions at that time. So his paperwork had been placed in dress out before knowing that the conditions were met. And after he was dressed out it was acknowledged in dress out that he had a bond posted, and at that time he was taken . . . back to jail reception.

We believe that Deputy Ingram's testimony provides competent evidence to support the trial court's findings that the delay between the time bond was posted and the time

Defendant was released was both unintentional and reasonable. Accordingly, we conclude that the trial court did not err in finding that no substantial violation of Defendant's rights occurred.

We also reject Defendant's contention that because of the delay in his release, his right to have his friends and family members observe his condition was compromised. Defendant points to our Court's decision in *Labinski*, in which we held that

> [i]f the provisions of the foregoing pretrial release statutes are not complied with by the magistrate, *and* the defendant can show irreparable prejudice directly resulting from a lost opportunity to gather evidence in his behalf by having friends and family observe him and form opinions as to his condition following arrest . . . and to prepare a case in his own defense, the DWI charge must be dismissed.

188 N.C. App. at 126, 654 S.E.2d at 744 (citation and internal quotation marks omitted).

In the present case, the trial court did not err in finding that Defendant had failed to show prejudice. Defendant had a passenger in his vehicle who had the opportunity to observe his condition at the time of his arrest. Furthermore, although Officer Griffin gave Defendant the option of having a witness present during the performance of the Intoxilyzer test, Defendant voluntarily waived that right and did not request to have anyone present. Defendant's mother was also allowed to

communicate with him over the phone while he was in custody and was present at the time of his release. Moreover, we note that upon her arrival at the jail, she did not make any request to observe Defendant's condition.

For these reasons, we believe competent evidence existed to support the trial court's finding that "[D]efendant [was] not . . . deprived of an opportunity to obtain evidence to support any defense." *See State v. Daniel*, 208 N.C. App. 364, 366, 702 S.E.2d 306, 308 (2010) (holding that defendant's detention for nearly 24 hours after being taken into custody for driving while impaired did not violate her statutory rights "to the point of irreparably prejudicing any preparation of a defense to the charge"); *Labinski*, 188 N.C. App. at 128, 654 S.E.2d at 745 (although defendant alleged that magistrate committed statutory violation in delaying her release from jail, she failed to show prejudice because she had opportunity to contact witnesses before submitting to Breathalyzer test, was informed of that right, and was not denied access to friends and family who could serve as witnesses).

### Conclusion

For the reasons stated above, we conclude that the trial court did not err in denying Defendant's motion to suppress or in denying his motion to dismiss.

NO ERROR.

Judge STEELMAN and STEPHENS concur.

Report per Rule 30(e).