An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-680

Filed: 2 June 2015

Mecklenburg County, No. 12 CRS 227341

STATE OF NORTH CAROLINA

v.

SALVADOR QUINONEZ.

Appeal by defendant from judgment entered 19 September 2013 by Judge James W. Morgan in Mecklenburg County Superior Court. Heard in the Court of Appeals 4 November 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Benjamin J. Kull, for the State.*

> *Glover & Petersen, P.A., by Ann B. Petersen, for defendant-appellant.*

CALABRIA, Judge.

Salvador Quinonez ("defendant") appeals from a judgment entered upon a jury verdict finding him guilty of trafficking in methamphetamine by transport. Defendant challenges the denial of his motion to suppress as well as his sentence. We find no error.

I. Background

On 20 June 2012, Special Agent Jorge Alamillo ("Agent Alamillo") of the Drug Enforcement Administration ("DEA") received information from a confidential informant ("the informant") indicating that a person known as "Tarahumara" had contacted the informant and wanted to sell a large amount of methamphetamine. Agent Alamillo instructed the informant to set up the sale for the next day, and the DEA would conduct an operation to apprehend Tarahumara.

The next day, 21 June 2012, the informant was scheduled to meet Tarahumara in a Ross parking lot in Concord, North Carolina. A dark Mitsubishi Lancer ("the Lancer") driven by an Hispanic female entered the parking lot and parked next to the informant's vehicle. Defendant spoke briefly with the informant, then returned to the Lancer's passenger seat. The informant drove out of the parking lot, and the Lancer followed the informant's vehicle. Agent Alamillo relayed the Lancer's license plate number to the other law enforcement officers involved in the operation.

Officer Chris Newman ("Officer Newman") of the Charlotte-Mecklenburg Police Department ("CMPD") was assisting the DEA agents in the operation. Officer Newman observed the Lancer travelling below the speed limit on North Tryon Street before it traversed across two lanes of travel, causing other vehicles behind it to slow down. Officer Newman stopped the Lancer and spoke with both the female driver and with defendant. The female driver consented to a search of the Lancer, during which Officer Newman and his K-9 partner discovered perfume boxes in the back

seat. The K-9 unit indicated a positive alert to the perfume boxes, which contained approximately one pound of methamphetamine. Law enforcement seized both the Lancer and the perfume boxes containing the methamphetamine.

Defendant was arrested and charged with two counts of trafficking in methamphetamine and possession with intent to sell or deliver a controlled substance. Agent Alamillo interviewed defendant subsequent to his being taken into custody. During the interview, defendant indicated that he had received the methamphetamine that was found in the Lancer from an Hispanic male in Greensboro. Defendant also offered to identify three locations where individuals were storing drugs. Agent Alamillo and CMPD Officer Paul Brent Foushee ("Officer Foushee"), accompanied defendant to Greensboro, where defendant identified three houses as "stash locations." Subsequent DEA investigations into those locations resulted in four arrests as well as the seizure of 2.3 pounds of methamphetamine, 266 grams of cocaine, and a firearm.

On 25 March 2013, defendant filed a motion to suppress the stop of the Lancer, the methamphetamine law enforcement discovered in the vehicle, and defendant's subsequent statements to law enforcement. At the hearing on defendant's motion to suppress, the State presented evidence from Agent Alamillo, Officer Newman, and Officer Foushee. Defendant also testified at the hearing. On 17 September 2013, the trial court denied defendant's motion to suppress.

At trial, the State presented evidence from the informant, Agent Alamillo, and Officer Newman. On 19 September 2013, the jury found defendant guilty of one count of trafficking in methamphetamine, and not guilty of the other offenses. The trial court sentenced defendant to a minimum of 225 months and a maximum of 279 months in the custody of the North Carolina Division of Adult Correction. Defendant appeals.

## II. Motion to Suppress

On appeal, defendant argues that there was no reasonable suspicion to support the traffic stop. Specifically, defendant contends that the trial court's finding that the vehicles behind the Lancer were required to apply their brakes quickly to avoid a collision is unsupported by the evidence. We disagree.

"The standard of review regarding a trial court's decision with respect to a motion to suppress is 'whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law.'" *State v. Armstrong*, ___ N.C. App. ___, ___, 762 S.E.2d 641, 643 (2014) (citation omitted). "[T]he trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Allen*, 197 N.C. App. 208, 210, 676 S.E.2d 519, 521 (2009) (citation omitted). Findings not challenged on appeal are deemed supported by competent evidence and are binding on appeal. S*tate v. Biber*,

365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011). "Conclusions of law are reviewed de novo [.]" *Id.*

> In *Whren* [*v. United States*, 517 U.S. 806, 135 L.Ed.2d 89 (1996)], the United States Supreme Court held that the temporary detention of a motorist upon probable cause to believe that he has violated a traffic law is not inconsistent with the Fourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist for the violation.

*State v. McClendon*, 350 N.C. 630, 635, 517 S.E.2d 128, 131 (1999). Reasonable suspicion is the appropriate standard in determining whether a traffic stop is appropriate. *State v. Styles*, 362 N.C. 412, 416, 665 S.E.2d 438, 441 (2008). "Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Id.* at 414, 665 S.E.2d at 439 (citation and quotation marks omitted).

Defendant relies upon *Styles*, *State v. Ivey*, 360 N.C. 562, 633 S.E.2d 459 (2006), and *State v. McRae*, 203 N.C. App. 319, 691 S.E.2d 56 (2010), to support his argument that Officer Newman lacked reasonable suspicion to initiate the traffic stop. Specifically, defendant contends that there was no evidence supporting a violation of N.C. Gen. Stat. § 20-154 and the record is silent on whether the Lancer signaled before changing lanes.

In *Ivey*, the Court applied the probable cause standard to hold that the stop was unlawful. 360 N.C. 562, 565-66, 633 S.E.2d 459, 461-62. However, *Ivey* was

abrogated by *Styles*, which held that reasonable suspicion is the proper standard in determining whether a stop is lawful. 362 N.C. at 415, 665 S.E.2d at 440. In *Styles*, the defendant argued that the stop in that case was improper because there was no evidence that the movement of his vehicle could have affected the operation of another vehicle pursuant to N.C. Gen. Stat. § 20-154(a). 362 N.C. at 416, 665 S.E.2d at 441. The Supreme Court of North Carolina determined that "changing lanes immediately in front of another vehicle may affect the operation of the trailing vehicle[,]" and therefore the law enforcement officer's observation of the defendant's vehicle changing lanes without signaling provided the required reasonable suspicion to stop the defendant's vehicle. *Id.* at 417, 665 S.E.2d at 441.

In *McRae*, law enforcement received a tip from a confidential source that the defendant would be driving a green vehicle with over 60 grams of cocaine. 203 N.C. App. at 320, 691 S.E.2d at 57. The defendant was stopped when a law enforcement officer witnessed him turn into a gas station parking lot without using his turn signal. *Id.*, 691 S.E.2d at 57-58. On appeal, the defendant argued that the trial court erred in concluding that his failure to use his turn signal justified the stop. *Id.* at 322, 691 S.E.2d at 58. This Court held that the trial court properly concluded that a reasonable officer would have believed that the failure to use a turn signal could have affected another motor vehicle, and therefore the law enforcement officer had reasonable suspicion to stop the defendant. *Id.* at 323, 691 S.E.2d at 59.

In the instant case, Officer Newman testified that he observed the Lancer travelling approximately five to ten miles slower than the posted speed limit. He then observed the Lancer travel across two lanes of traffic in order to reach an exit lane. Officer Newman stated that the Lancer "cut over in front of some vehicles, causing traffic to slow way down, backing up traffic" and that about fifteen other vehicles were affected by the Lancer's movement. He also testified that the Lancer "made an unsafe movement without turning or starting from a direct point in which a lane change could be done safely."

Defendant is correct that the record does not include evidence regarding whether the driver activated her turn signal or looked to see if the movement could be conducted safely before she changed lanes. However, Officer Newman did not need probable cause to stop the Lancer. Instead, he only needed reasonable suspicion that an unsafe movement occurred. Because Officer Newman observed the Lancer travelling at approximately ten miles per hour below the posted speed limit before it crossed two lanes of traffic, causing other vehicles on the road to slow down, he had reasonable suspicion that the driver of the Lancer did not check to see whether the movement could be made safely without affecting other vehicles on the road. The trial court's findings that the Lancer slowed to approximately ten miles per hour below the speed limit and abruptly crossed two lanes of traffic, causing other vehicles to slow down is supported by Officer Newman's testimony. Therefore, the trial court

appropriately concluded that there was reasonable suspicion to stop the Lancer based upon the information given by the informant and the traffic law violation, and properly denied defendant's motion to suppress.

### III. Sentencing

Defendant also argues that the trial court erred in concluding that the assistance that he gave law enforcement in locating other known drug locations in the Greensboro area was not substantial. Specifically, defendant contends that he should have been granted a lesser sentence because of his assistance to law enforcement.

"This Court has held that whether a trial court finds that a criminal defendant's aid amounts to 'substantial assistance' is *discretionary*. The reduction of the sentence is also in the judge's discretion, even if the judge finds substantial assistance was given." *State v. Robinson*, 177 N.C. App. 225, 232, 628 S.E.2d 252, 256 (2006) (citations and quotation marks omitted). "To overturn a sentencing decision, the reviewing court must find an abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play." *Id*. at 232-33, 628 S.E.2d at 256-57 (citation and internal quotation marks omitted). "A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so

arbitrary that it could not have been the result of a reasoned decision." *State v. Wilson*, 313 N.C. 516, 538, 330 S.E.2d 450, 465 (1985).

N.C. Gen. Stat. § 90-95(h)(5) provides that a sentencing judge

> *may* reduce the fine, or impose a prison term less than the applicable minimum prison term provided by this subsection, or suspend the prison term imposed and place a person on probation when such person has, to the best of his knowledge, provided substantial assistance in the identification, arrest, or conviction of any accomplices, accessories, co-conspirators, or principals if the sentencing judge enters in the record a finding that the person to be sentenced has rendered such substantial assistance.

N.C. Gen. Stat. § 90-95(h)(5) (2013) (emphasis added). "In other words, N.C. Gen. Stat. 90-95(h)(5) is a provision exchanging *potential* leniency for assistance . . . . It is the only provision in the trafficking statutory scheme which gives a sentencing judge the *discretion* not to impose the statutorily mandated minimum sentence and fine." *State v. Steele*, 201 N.C. App. 689, 694, 689 S.E.2d 155, 160 (2010) (citation and internal quotation marks omitted). "Furthermore, our courts have recognized that the 'substantial assistance' statute is permissive, not mandatory, and that defendant has no right to a lesser sentence even if he does provide what he believes to be substantial assistance." *State v. Kamtsiklis*, 94 N.C. App. 250, 260, 380 S.E.2d 400, 405 (1989) (citation omitted).

In the instant case, defendant identified three locations to law enforcement where individuals were storing drugs. As a result of subsequent investigations into

those locations, officers arrested four individuals and recovered 2.3 pounds of methamphetamine, 266 grams of cocaine, and a firearm. Defendant did not participate in any undercover drug buys or interact with the investigation beyond identifying the locations to Agent Alamillo and Officer Foushee. At sentencing, the trial court found that "[b]ased on the evidence presented at trial, considering the arguments of counsel for the State and for the defendant, I understand that while the defendant did offer assistance, that this assistance is not substantial and that the sentence in the statutory range is justified."

Defendant contends that the trial court's language indicates that the trial court did not make an independent ruling that defendant's assistance was not substantial within the meaning of N.C. Gen. Stat. § 90-95(h)(5). However, the evidence presented included evidence concerning defendant's assistance in the identification of the "stash locations" and the subsequent arrest of suspects. Defendant has no right to a lesser sentence even if he provided what he believes to be substantial assistance, *Kamtsiklis*, 94 N.C. App. at 260, 380 S.E.2d at 405, and the trial court's finding indicates that it reached a reasoned decision and considered defendant's assistance to law enforcement before sentencing him in the statutory range. Defendant's argument is without merit.

## IV. Conclusion

Officer Newman had reasonable suspicion to stop the Lancer due to his observation of the Lancer's unsafe movement in traffic. Therefore, the trial court properly denied defendant's motion to suppress the evidence of the methamphetamine as well as defendant's subsequent statements. Additionally, the trial court did not abuse its discretion in considering defendant's assistance to law enforcement before sentencing him in the presumptive range. We hold that defendant received a fair trial, free from error.

NO ERROR.

Judges STROUD and McCULLOUGH concur.

Report per Rule 30(e).