# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01305-COA

**LONNIE JONES A/K/A LONNIE JONES, JR.**                                      APPELLANT

v.

**STATE OF MISSISSIPPI**                                                                      APPELLEE

DATE OF JUDGMENT:                          05/02/2016
TRIAL JUDGE:                                     HON. CLAIBORNE MCDONALD
COURT FROM WHICH APPEALED:     MARION COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:           OFFICE OF STATE PUBLIC DEFENDER
                                                      BY: GEORGE T. HOLMES
ATTORNEYS FOR APPELLEE:            OFFICE OF THE ATTORNEY GENERAL
                                                      BY: LISA L. BLOUNT
                                                         JOSEPH SCOTT HEMLEBEN
DISTRICT ATTORNEY:                       HALDON J. KITTRELL
NATURE OF THE CASE:                      CRIMINAL - FELONY
DISPOSITION:                                  AFFIRMED: 03/27/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., FAIR AND WESTBROOKS, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     Lonnie Jones was convicted of possession of synthetic cannabinoids with intent to distribute.  He was also convicted of child endangerment based on the presence of his four-year-old daughter in the home with the drugs.  On appeal, Jones contends that the search warrant for his residence was issued without probable cause and that his convictions are unsupported by sufficient evidence.  We find no merit to these contentions, and so we affirm.

## DISCUSSION

1.      **Search Warrant / Probable Cause**

¶2.    The search warrant for Jones's residence stemmed from a police search for guns, magazines, and ammunition stolen in a local burglary approximately five days before. The warrant was issued based on an affidavit from a police investigator that stated a woman, Jessica Cochran, had been suspected of taking the guns based on her having been in the residence prior to their being stolen. The affidavit further noted that a "concerned citizen" had told a deputy that Cochran had said she took the guns to Jones's residence. A separate "proven confidential source" had told a different investigator that Jones was in possession of stolen guns at his residence.[1]

¶3.    When the authorities executed the search warrant, they saw Jones toss a camera bag behind a couch he had been sitting on. A search of the camera bag revealed two small bags of synthetic marijuana, other small plastic bags, and a digital scale. The authorities found other drug paraphernalia in plain view, as well as four more small bags of synthetic marijuana in a pillowcase on Jones's bed. According to the officers, the bags fell out of the pillowcase when the bed was searched.

¶4.    On appeal, Jones contends that the warrant was not supported by probable cause because it was based on accounts of confidential informants. The relevant test was outlined by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 238 (1983), as

---

[1] At the suppression hearing and the trial, the officers testified to additional facts that bolstered the case for probable cause; but they cannot be considered. "[A]n otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate." *Whiteley v. Warden Wyo. State Penitentiary*, 401 U.S. 560, 565 n.8 (1971).

follows:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

"[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238-39.

¶5.     Jones focuses his arguments on the reliability of the confidential informants. He notes the absence of any attested prior police experience with the "concerned citizen" that might speak to his or her veracity. Jones further notes that the second informant was only said to have been "proven," without explanation of what had been proven. According to Jones, the informant could have been "proven" to be unreliable or untruthful. This is just not a reasonable construction of the warrant's language. When used to describe a source, by itself the word "proven" can only be reasonably construed to have a positive connotation; for example, the American Heritage Dictionary defines proven as "having been demonstrated or verified without doubt." *American Heritage Dictionary* 1458 (3d ed. 1993).

¶6.     While it certainly would have been preferable for the affidavit to have explicitly recited that the informant had "furnished [the authorities] with information in the past that has proven to be true and correct,"[2] or some similar formulation, given the context it is difficult to take any other meaning from the use of the words "proven confidential source."

---

[2] *See, e.g.*, *Roach v. State*, 7 So. 3d 911, 913 (¶3) (Miss. 2009).

Indeed, there are numerous published examples of courts using a similar description to indicate that informants have previously provided reliable information. *See, e.g.*, *State v. Johnson*, 52 So. 3d 110, 117 (La. Ct. App. 2010) ("proven confidential informant"); *State v. McRae*, 691 S.E.2d 56, 60 (N.C. Ct. App. 2010) ("proven, confidential informant"); *Davis v. State*, 165 S.W.3d 393, 402 n.24 (Tex. Ct. App. 2005) ("proven confidential informant") (reversed on other grounds by *Davis v. State*, 212 S.W.3d 149, 158 (Tex. Crim. App. 2006)); *Bristol v. State*, 584 So. 2d 1086, 1088 (Fla. Dist. Ct. App. 1991) ("proven informant"); *Corley v. State*, 713 P.2d 12, 13 (Okla. Crim. App. 1985) ("proven confidential informant") (overruled on other grounds by *Langham v. State*, 787 P.2d 1279, 1281 (Okla. Crim. App. 1990)).

¶7. Probable cause is a totality of the circumstances analysis. *Petti v. State*, 666 So. 2d 754, 757 (Miss. 1991). The account of the "proven source" was corroborated by the independent account of the (admittedly "unproven") "concerned citizen," which was itself supported by the police investigation that had identified Cochran as a suspect in the burglary where the guns were stolen. We are satisfied that this evidence, viewed in the totality of the circumstances, was sufficient to give the issuing court a "substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238-39.

¶8. Jones also contends that the issuing court lacked probable cause as to the magazines and ammunition, as the affidavit only specifically mentioned that the guns, and not the magazines and ammunition which had been taken with the guns, had been moved to Jones's

home. Jones cites *Carney v. State*, 525 So. 2d 776, 783 (Miss. 1988), where the Mississippi Supreme Court found a warrant to have been issued without probable cause as to "other small items." Jones argues that, without probable cause for the magazines and ammunition, the warrant could not authorize the search of any areas of his home that were too small to contain a rifle.

¶9.     This particular challenge to the search is raised for the first time on appeal and is barred as a result. *See Baskin v. State*, 145 So. 3d 601, 603 (¶11) (Miss. 2014). Notwithstanding the procedural bar, however, we find that the issuing court had a substantial basis for concluding that probable cause existed as to the ammunition and magazines. They were taken at the same time as the firearms and would be expected to accompany them because guns, magazines, and ammunition are related items and depend on each other for utility. But at the same time, a separate search is justified because the magazines and ammunition are often removed when firearms are placed in storage. "Probable cause is a practical, nontechnical concept, based upon the conventional considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Strode v. State*, 231 So. 2d 779, 782 (Miss. 1970). Notwithstanding that it is procedurally barred, we find no merit to this argument.

### 2.     Search Warrant / Particularity

¶10.   Jones contends that the search warrant was invalid because it was overbroad. He points to what he calls a "catchall clause" that formed the concluding paragraph of the

warrant. It stated:

> Do not interpret this writ as limiting your authority to seize all contraband and things the possession of which is itself unlawful which you find incident to your search, or as limiting your authority to make otherwise valid arrests at the place described above.

¶11. This challenge to the warrant has also been raised for the first time on appeal and is barred as a result. *See Baskin*, 145 So. 3d at 603 (¶11). Notwithstanding the procedural bar, we see no overbroadness in the provision. It only authorizes the seizure of contraband if it is found pursuant to the search authorized for the items particularly described in the warrant; in other words, the clause is a restatement of the plain view doctrine. *See Horton v. California*, 496 U.S. 128, 135 (1990); *Hall v. State*, 455 So. 2d 1303, 1307 (Miss. 1984).

### 3. Sufficiency of the Evidence / Constructive Possession

¶12. Jones describes this issue as a challenge to the weight of the evidence, but his arguments are all addressed to its sufficiency, so we will address that question instead. Specifically, Jones contends on appeal that there was insufficient evidence to prove he constructively possessed the synthetic marijuana that was found in a pillowcase in the bedroom.

¶13. When reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Magee v. State*, 213 So. 3d 243, 249 (¶14) (Miss. Ct. App. 2017). Where the facts and inferences "point in favor of the defendant on any element of the offense with sufficient

6

force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is to reverse and render. *Id*. However, if "reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. *Id*.

¶14. Possession can be actual or constructive; constructive possession exists where the contraband was not found in the defendant's actual physical possession but was "subject to [the defendant's] dominion or control." *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971). It "may be established where the evidence, considered under the totality of the circumstances, shows that the defendant knowingly exercised control over the contraband." *Knight v. State*, 72 So. 3d 1056, 1063 (¶26) (Miss. 2011). When the defendant owns or controls the premises where the contraband is found, there is a presumption of constructive possession of the contraband. *Ferrell v. State*, 649 So. 2d 831, 834 (Miss. 1995). But if the defendant's possession of the premises is not exclusive, there must be additional incriminating circumstances tying him to the drugs. *Fultz v. State*, 573 So. 2d 689, 690 (Miss. 1990). While it is evidence of constructive possession, "mere physical proximity to the contraband does not, in itself, show constructive possession." *Ferrell*, 649 So. 2d at 834.

¶15. On appeal, Jones points out that the home was owned by his mother, and that there were other individuals in it at the time the warrant was served and the drugs were found. He notes that one of them, a juvenile, was also in possession of synthetic marijuana when the

7

warrant was served.

¶16. Jones's argument falls apart, however, when he contends that there was nothing linking him to the drugs found in the bedroom. In fact, the officers testified that Jones admitted the bedroom was his. They also testified that Jones told them they would find documents relating to his daughter in a dresser in his bedroom, which they did. The officers also testified that it appeared that Jones's mother resided in a different bedroom in the house, based on the personal effects. On appeal, Jones just ignores this testimony; but we are of the opinion that Jones's possession of the home and the bedroom were established by sufficient evidence at trial, and that even if that possession were not exclusive, there were clearly "additional incriminating circumstances" – the facts that Jones was contemporaneously found in actual possession of other synthetic marijuana, along with paraphernalia related to distribution, such as bagging material and digital scales. *See Fultz*, 573 So. 2d at 690. We are satisfied that there was sufficient evidence for a reasonable jury to convict based on a constructive-possession theory. This issue is without merit.

### 4. Sufficiency of the Evidence / Child Endangerment

¶17. Finally, Jones contests the sufficiency of the evidence supporting his conviction for child endangerment.

¶18. Mississippi Code Annotated section 97-5-39(4)(a) (Rev. 2014) provides in relevant part:

> A parent, legal guardian or caretaker who endangers a child's person or health
> by knowingly causing or permitting the child to be present where any person

8

is selling, manufacturing or possessing immediate precursors or chemical substances with intent to manufacture, sell or possess a controlled substance as prohibited under Section 41-29-139 or 41-29-313, is guilty of child endangerment[.]

The indictment specifically alleged that Jones permitted his four-year-old daughter to be present where he possessed a controlled chemical substance – synthetic marijuana – with intent to sell it.

¶19.   Jones focuses his arguments on the fact that there was no evidence the child was present during any actual drug sales.  While he is correct on that point, his argument misses the mark – the statute requires only that the child be present with the controlled chemical substances while Jones possessed them with the intent to sell; there is no requirement that actual sales occur in the child's presence.  The evidence at trial supported a finding that the synthetic marijuana was possessed with intent to distribute – the quantity was testified to be in excess of what would be expected for personal use, and some of the drugs were found with small empty bags and digital scales that suggested they were being repackaged for sale.  One of the officers who served the warrant testified that Jones's daughter was present in the living room with him when the warrant was served.  At the time, Jones was in actual physical possession of the camera bag with synthetic marijuana and distribution-related paraphernalia inside.

¶20.   Finally, Jones contends that there was no evidence the child was actually "endangered" by the drugs since they were under his control and there was no evidence she was actually exposed to them.  This contention is factually dubious, given that other

9

controlled substances and paraphernalia were found unattended in the house. Regardless, by its plain language the statute does not require proof that the child was placed into any danger beyond the inherent danger of being in the presence of the chemical substances while they are possessed with the requisite intent – by statutory definition, one "endangers a child's person or health by knowingly causing or permitting the child to be present" with the drugs or precursors. *See* Miss. Code Ann. § 97-5-39(4)(a); *see also State v. Perry*, 725 N.W.2d 761, 765-66 (Minn. Ct. App. 2007) (construing Minnesota's materially identical child endangerment statute and concluding that "the state does not have to prove actual danger to a child's person or health as an element of the crime").

¶21. Jones's conviction of child endangerment is supported by sufficient evidence.

¶22. **AFFIRMED.**

     **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**